215 So.2d 526 (1968)
Helen Bridges BROYLES
v.
Herbert BROYLES.
Herbert BROYLES
v.
Helen Bridges BROYLES.
No. 7342.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
*527 Ponder & Ponder, Amite, for appellant and appellee Herbert Broyles.
Schilling & Simpson, Amite, for appellant and appellee Helen Bridges Broyles.
Before LOTTINGER, ELLIS and BAILES, JJ.
ELLIS, Judge.
These two suits seek the partition of the community formerly existing between the parties. The points at issue in this case involve claims by the separate estate of each party against the community, and claims by the community against their separate estates. The district court rendered a judgment decreeing the partition, ordering the sale of the community immovables, recognizing some of the claims and rejecting others. Both parties have appealed.
The parties were married on November 18, 1949. Mrs. Broyles was a widow and owned certain property in Michigan which she had inherited from her husband. One of those parcels was a business which she had sold, and on which she was receiving payments of $200.00 per month, including principal and interest. These payments, which continued until May 13, 1954, were deposited in a community account. The total principal received was $8,102.15, the remainder being attributed to interest.
In March, 1950, Mrs. Broyles renegotiated the sale, and, in addition to the above payments, which were continued by the new purchasers, received a cash payment of $2,000.00, which was deposited in a bank in Michigan, in the names of Mr. and Mrs. Broyles. The balance of $1,162.62 in the Michigan account was withdrawn and deposited in a joint account in a bank in Kentwood, Louisiana, on May 31, 1950, bringing its balance to $1,684.08.
On June 2, 1950, $1,998.80 of Mr. Broyles' separate funds were deposited in the same account, bringing the total balance to $3,673.91. A few small checks were drawn on the account, and on June 7, a deposit of $199.30 was made bringing the balance to $3,803.41. On June 8, the Broyles bought a home in Kentwood, and paid the $3,500.00 down payment with a check on the joint account.
On January 9, 1951, Mrs. Broyles received $3,300.00 from the sale of her former home in Michigan and deposited it in the joint account in Louisiana.
In June, 1954, Mrs. Broyles completed the sale of the business in Michigan, and received therefrom and deposited in a new joint savings account the sum of $6,219.00. On September 4, 1954, $219.00 was withdrawn from the account. On August 1, 1956, $2,243.61 was withdrawn from the account. This amount is equal to $2,000.00 plus all interest credited to the account up to that time, and left a balance of $4,000.00. Various deposits and withdrawals, together with interest credited to the account, brought the balance to $5,682.26 on February 14, 1959. On February 28, 1959, $5,000.00 was withdrawn from the account and used as a down payment on a farm purchased by the community.
Mr. Broyles testified that he received $1,800.00 from the sale of separate property, *528 and that he paid this amount on the mortgage bearing against the farm.
When the parties were married, each of them had a life insurance policy, premiums on which were paid with community funds during the existence of the marriage. It is stipulated that the cash value of Mr. Broyles' policy increased $375.00 during that time. It was further stipulated that Mrs. Broyles' policy increased in value $1,873.45 during the same period. The community claims a credit against the separate estate of each party to the extent of the enhancement.
It further appears from the record that Mr. Broyles had $907.98 in the Teachers' Retirement System of Louisiana at the end of the 1949-1950 fiscal year, and $6,422.62 at the end of the 1964-1965 fiscal year. Mrs. Broyles claims that the community has enriched Mr. Broyles' separate estate to the extent of the increase.
It further appears that, in January, 1965, shortly before the separation suit was filed, Mr. Broyles withdrew $2,603.08 from a homestead, $823.23 from a credit union and sold a Volkswagen for $925.00. All of these amounts were community funds. He paid community debts totalling $2,581.19 with the funds, but was unable to account for the balance of $1,770.12. Mrs. Broyles is claiming that he owes that amount to the community.
Mr. Broyles claims that, at the time of the marriage, he owned three automobiles and a boat, valued at $4,100.00, and that he should be allowed the return of like chattels or their value.
From the above circumstances, it appears that Mrs. Broyles has shown that she received $19,621.15 from the sale of her separate properties during the marriage, and that all of it was either invested in community property or co-mingled with community funds.
The district judge found that $1,162.62 of the down payment on the home and all of the $5,000.00 down payment on the farm were identifiable as her separate property which had been used to enhance the value of the community, and recognized her claim against the community estate to that extent. He found that all of the other funds had lost their separate identity by being co-mingled with community funds, and that she was not entitled to restitution.
The applicable provisions of the Civil Code are Articles 2390 and 2391, which provide that when a husband receives the paraphernal property of his wife, she has a right of action against him for the restitution of such amounts. In order to obtain restitution, she need only prove that her separate property, or the proceeds of a sale thereof, were delivered to her husband, and were used for his benefit or for the benefit of the community. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (1957). She need not prove that the value of the community has been enhanced by the expenditure of her funds.
Mrs. Broyles has satisfied her burden of proof in this respect, and her separate estate is entitled to restitution of the full amount of $19,621.15 by the community estate. Downs v. Morrison, 13 La.Ann. 379 (1858).
The husband who is making claims against the community on behalf of his separate estate has the burden of proving that his separate funds enhanced the value of the community, and he is entitled to reimbursement by the community of the amounts so employed. Succession of Provost, 190 La. 30, 181 So. 802 (1938); Slater v. Culpepper, supra.
Mr. Broyles' claims for $1,800.00 and $1,198.80 of separate funds invested in the farm and home, respectively, are not disputed, and the judgment below is correct in that respect. In the case of the automobiles and the boats, he has offered no proof other than his testimony that he owned them at the time of his marriage, which *529 is not sufficient to establish enhancement of the community. This claim was properly rejected by the trial court.
Mr. Broyles testified that, at the time of his marriage, he had a brown manila envelope containing $500.00 in cash. He further testified that his $500.00 made up a part of the $3,500.00 down payment on the home, and that his separate estate was entitled to reimbursement by the community. Suffice it to say that his own testimony on cross examination negates this claim, which was properly rejected by the trial court.
There is no dispute as to the ruling of the trial court awarding to each party one half of the enhancement in value of the separate life insurance policy of the other.
Mr. Broyles claims that the amount in the Teachers' Retirement Fund are his separate property, citing Scott v. Scott, 179 So.2d 656 (La.App. 2 Cir.1965) in support thereof. He is correct in his contention. However, only community funds were paid into the fund during the existence of the marriage. His separate estate is indebted to Mrs. Broyles for one half of the increase in value of the fund, and the district court properly so held. Article 2408, Civil Code.
The final question to be determined relates to the $1,770.12 of community funds not accounted for by Mr. Broyles. He takes the position that, as head and master of the community, he does not have to account for his administration of the community prior to the suit for separation. This contention is correct, except in the case provided for in Article 2404 of the Civil Code. This article, as interpreted in Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956), provides that a husband who has sold or disposed of community property by fraud, to injure his wife, is liable to the wife for one half of the value of the property disposed of.
The funds in question were withdrawn or received by Mr. Broyles at a time when he knew the separation suit was to be filed. Although he did pay a number of community obligations, he was unable to account for over 40% of the money. The district judge found that Mr. Broyles acted fraudulently and with intent to injure his wife, and awarded her one half of the amount unaccounted for. We are unable to say that he committed manifest error.
We find that Mrs. Broyles is entitled to receive from the mass of the community the sum of $19,621.15, or the sum of $9,810.58 from Mr. Broyles' half of the community. She is indebted to Mr. Broyles for $936.73, one half of the enhancement in value of her separate life insurance policy.
We find that Mr. Broyles is entitled to receive from the mass of the community estate the sum of $3,798.80, or $1,899.40 from Mrs. Broyles' half of the community. He is indebted to Mrs. Broyles for one half of the sum of the enhancement in value of his retirement fund and his life insurance policy, plus one half of the $1,770.12 not accounted for by him, or a total of $3,829.78.
Offsetting the above amounts, we find that Mr. Broyles is indebted to Mrs. Broyles for $10,804.23.
The judgment appealed from is hereby amended to conform with the above findings, and as amended, it is affirmed. All costs are to be borne by Mr. Broyles.
Amended and affirmed.