259 So.2d 367 (1972)
Boyce McConathy BLALOCK, Plaintiff-Appellant,
v.
Melvin A. BLALOCK, Defendant-Appellee.
No. 11788.
Court of Appeal of Louisiana, Second Circuit.
February 29, 1972.
*368 Holloway, Baker, Culpepper, Brunson & Cooper, by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Emmons & Henry, by Edgerton L. Henry, Jonesboro, for defendant-appellee.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
Mrs. Boyce McConathy Blalock was granted a judgment of separation from defendant, Melvin A. Blalock, on January 25, 1971. On the same date she instituted this action for a partition by licitation of the property owned by the community of acquets and gains formerly existing between them. Attached to her petition was a sworn descriptive list of the assets of the community. Defendant answered generally admitting the allegations of the petition but alleging that the descriptive list was inaccurate and incomplete in several particulars.
Trial was held on the status of the disputed items. A number of the contested items were resolved by stipulation or by ruling of the court from which no complaint of error is made on appeal. The issues which remain contested on plaintiff's appeal are as follows:
(1) Ownership of a 40½ acre tract of land.
(2) The community's right to reimbursement from plaintiff's separate estate of an amount equal to funds on deposit to plaintiff's credit in the Teachers' Retirement System of Louisiana.
(3) The status of certain funds formerly on deposit in the Jackson Parish Bank and withdrawn by plaintiff prior to filing the separation suit.

*369 (4) The community's right to reimbursement from defendant's separate estate for community funds allegedly used to pay debts of defendant incurred prior to the marriage.
(1) Ownership of the 40½ acre tract.

The district court held that a 40½ acre tract of land acquired during the marriage was owned ½ by the defendant-husband's separate estate and ½ by the community in that the property was acquired in exchange for other property owned in the same proportions. The court further held that defendant's separate estate was indebted to the community for ½ of the cash paid and mortgage indebtedness assumed and paid in connection with the acquisition of this property. Plaintiff contends that since the greater part of the consideration paid for the property was community funds, the property acquired was owned solely by the community, with the community indebted to defendant's separate estate in an amount equal to the value of defendant's separate property exchanged in connection with the acquisition.
The facts relating to the acquisition of this tract are undisputed. Defendant was married twice and had one child of his first marriage. During his first marriage defendant acquired certain lots in the Village of Quitman. Upon the death of his first wife, defendant was the owner of a ½ interest in these lots as his share of the community and his wife's ½ interest was inherited by the child. Defendant married plaintiff in 1936, and on June 21, 1946, he purchased his child's ½ interest in the lots. The ½ interest purchased from the child fell into the community existing between plaintiff and defendant, and the remaining ½ interest still belonged to defendant's separate estate.
On April 6, 1950, Mr. Blalock executed an instrument styled "Exchange of Real Property" wherein he exchanged the lots in Quitman for the 40½ acre tract in question, then owned by H. T. McConathy. The deed shows that in addition to conveying the lots, defendant assumed a mortgage on the 40½ acre tract with an unpaid balance of $2,193.47. At the trial of this case, parol evidence was introduced to show defendant also paid Mr. McConathy $3,000 in cash as additional consideration for the property acquired. Defendant objected to the admissibility of parol evidence to vary the terms of the written instrument. This evidence was properly admitted in order to show the true or real consideration. See Dartez v. Meaux, 44 So.2d 147 (La.App. 1st Cir. 1950); Bash v. Sims, 210 So.2d 180 (La.App. 2d Cir. 1968); and Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960).
The evidence discloses that the parties attributed a value of $10,000 to the 40½ acre tract. The consideration paid can thus be stated as follows:

Cash (Community) $ 3,000.00
Assumption of mortgage (Community) 2,193.47
Value of the lots:
 Community ½ interest $2,403.26
 Defendant's ½ interest 2,403.27 4,806.53
 ________ __________
 Total Consideration $10,000.00

The general rule is that when a married man acquires real property in his name, without a dual declaration in the deed that he is purchasing the property with his separate funds and intends it to become part of his separate estate, the property so purchased is conclusively presumed to belong to the community. Succession of Sonnier, 208 So.2d 562 (La. App. 3d Cir. 1968). The general rule does not apply in cases where the husband exchanges his separate property for other property. In Kittredge v. Grau, 158 La. 154, 103 So. 723 (1925), the supreme court said:
"It is true the five decisions cited in the original opinion handed down in this caseand there are others to the same effectmaintain that article 2402 of the Civil Code does not apply to contracts of exchange of real estate. Property so acquired during marriage, in the name of either spouse is substituted for the property given in exchange for it, and *370 has the same status or ownership. If the property given was community property, so is the property received in exchange for it community property; and, if the property given belonged to the separate estate of the party in whose name it is given, so is the property received in the exchange his or her separate property."
While the quoted language appears to be dictum in the Kittredge case, the rule stated therein has been referred to in later cases as established jurisprudence in this state. See Lazaro v. Lazaro, 92 So.2d 402 (La. App.Orl. Cir. 1957); Succession of Hemenway, 228 La. 572, 83 So.2d 377 (1955); Schoeffner v. Schoeffner, 163 La. 142, 111 So. 655 (1927); and Slaton v. King, 214 La. 89, 36 So.2d 648 (1948).
Our courts have even held that where a sum of money is given in addition to the separate property exchanged, the transaction is nonetheless an exchange when the separate property comprised the major part of the consideration, and the property so acquired becomes part of the separate estate of the party in whose name it is acquired. In Dillon v. Freville, 129 La. 1005, 57 So. 316 (1912), the husband exchanged during his marriage certain portions of lots which were his separate property for other immovable property. In addition, he gave $55 cash "in order to equalize the value of his property . . . exchanged." The court held that the transaction was nonetheless an exchange although a balance was paid in money. LSA-Civil Code Article 2666. The court found that the property acquired in the exchange became part of the husband's separate estate. In doing so, the court reasoned "that the major part of the value given by Nason consisted of his separate real estate." (Emphasis supplied).
In Succession of Sonnier, supra, the husband of decedent owned, prior to his marriage, a 72 acre farm. During the marriage he conveyed the farm to Lastie Rozas and received in exchange a ½ acre lot and $17,500 in cash. The court found that the ½ acre lot became part of the husband's separate estate and reasoned as follows:
"Since the farm was more valuable than the one-half acre lot which Ardoin acquired and since Ardoin did not pay any additional consideration other than the conveyance of his separate property, we think he acquired the one-half acre tract in exchange for his separate property. Under the jurisprudence above cited the conclusion must be reached that the lot acquired by Ardoin at that time became his separate property." (Emphasis supplied).
The transaction in the case before us now was not a simple exchange of one property for another and did not involve the mere giving of "boot" to equalize the exchange. The community contributed a substantially greater portion of the consideration given for the property acquired. This fact distinguishes this case from the cases cited above and the law applicable to those cases. The transaction involved here is more similar to a purchase of property in which both separate and community funds are used to make up the consideration paid for the property acquired. In Succession of Hollier, 158 So.2d 351 (La. App. 3d Cir. 1963), remanded on other grounds, 247 La. 384, 171 So.2d 656, on remand 184 So.2d 790, writ refused 249 La. 203, 186 So.2d 160 (1966), the court stated the law applicable to purchases made with both separate and community funds:
"The law also is settled that when separate funds and community funds, even though distinguishable and not commingled, are used in making up the consideration paid for property acquired during the existence of the community, the property so purchased becomes community property, although the community may be indebted to the separate estate for the amount of separate funds used in making the purchase. Succession of Hemenway, supra; Reine v. Reine, 170 La. 839, 129 So. 364; Houghton v. Hall, *371 177 La. 237, 148 So. 37; Abunza v. Olivier, supra, 231 La. 445, 88 So.2d 815."
We hold that where property is acquired during the marriage and the major portion of the consideration for the property acquired consists of community assets, the property acquired is community property even though a part of the consideration was an exchange of the separate property of the husband. It follows that in such a situation, the community is indebted to the husband's separate estate for an amount equal to the value of the husband's separate property conveyed in the transaction.
For these reasons, the 40½ acre tract acquired is an asset of the community and the community is indebted to the separate estate of defendant for the value of his separate property used in making the acquisition, or $2,403.27. The judgment of the district court should be amended accordingly.
(2) Amount on deposit in the teachers' retirement fund.

The parties stipulated the amount on deposit in the teachers' retirement fund which plaintiff could withdraw on the date of dissolution of the community was $9,666.73. The district court held this fund was the separate property of plaintiff and her separate estate was indebted to the community for the full amount on deposit.
The law is settled that the money on deposit in the teachers' retirement fund is the separate property of the teacherspouse. Scott v. Scott, 179 So.2d 656 (La. App. 2d Cir. 1965); Moore v. Moore, 187 So.2d 145 (La.App. 2d Cir. 1966); and Broyles v. Broyles, 215 So.2d 526 (La. App. 1st Cir. 1968). The only issue before this court concerns the amount owed the community by the separate estate of plaintiff on account of the increase in value in the retirement fund.
Plaintiff-appellant argues that not all of the money in the fund was contributed by plaintiff, that some of it was contributed by the state and since defendant failed to prove how much Mrs. Blalock actually paid into the fund he is not entitled to a judgment for reimbursement.
This argument is without merit. All of the accumulated contributions credited to the individual account of a teacher in the teachers' retirement fund are made up of contributions deducted from the salary of the teacher. LSA-R.S. 17:571, 17:640, 17:692. All amounts on deposit to her credit were accumulated during the marriage as a result of the common labor or industry. The wife's separate estate was increased or improved during the marriage by the total amount on deposit to her account and the husband is entitled to ½ of the value of the increase. LSA-Civil Code Article 2408; Broyles v. Broyles, supra.
The separate estate of plaintiff is indebted to defendant for ½ of the amount on deposit, or as stated in the district court judgment for purpose of consistency in listing community assets and liabilities, to the community for the entire amount on deposit in the retirement fund, or $9,666.73.
(3) Bank accounts at the Jackson Parish Bank.

The district court held plaintiff is indebted to the community for the amount of funds withdrawn by her from the Jackson Parish Bank shortly before filing suit for separation, plaintiff having failed or refused to account for the funds. On appeal, plaintiff contends she is under no legal obligation to account for these funds and, alternatively, the case should be remanded for evidence concerning whether the funds were separate or community.
During the marriage, plaintiff maintained in her own name a checking account and a savings account at the Jackson Parish *372 Bank. Plaintiff testified that defendant was not authorized to write checks on the checking account and was not authorized to withdraw funds from the savings account.
Plaintiff and defendant separated on December 5, 1969. On that date the savings account had a balance of $5,198.81. Interest was posted to the account and on December 31, 1969, the balance was $5,263.80. The balance of the checking account on the date of separation was $4,562.35. On January 8, 1970, the entire amount of the savings account was withdrawn and a cash withdrawal of $4,206.20 was made from the checking account, or a total of $9,470. Mrs. Blalock filed suit for separation on January 27, 1970.
Defendant alleged the funds in both accounts were community funds and plaintiff should have to account for the large withdrawals made in January, immediately prior to the filing of suit. At the trial of the case, plaintiff did not explain or account for the disposition of the funds and the trial judge specifically found that she attempted to evade answering direct questions concerning withdrawal of the funds. The trial judge held the money in the two accounts was community property and that an accounting for the withdrawals should have been made by plaintiff. Since she could give no accounting for the disposal of the funds, her separate estate was held indebted to the community for the entire amount of the withdrawals.
In Kelly v. Kelly, 131 La. 1024, 60 So. 671 (1913), the supreme court held that both husband and wife must account for community funds or property in their respective possessions at the date of divorce or dissolution of the community. A judgment of separation dissolves the community retroactively as of the date of filing of the suit for separation. LSA-Civil Code Article 155.
The money withdrawn from the two accounts in the Jackson Parish Bank amounted to $9,470. Plaintiff denied making the withdrawals. When confronted with the bank ledger cards showing the withdrawals from the accounts over which she alone had control, she continued her denial of any knowledge concerning the money, including the amounts in the accounts, withdrawal of the money, or any subsequent disposition of the funds. The conclusion is inescapable that the withdrawals were made by her. Plaintiff was the only person authorized to withdraw from these accounts. Plaintiff's answers to questions of counsel regarding these funds were evasive and unresponsive. What happened to the money is a fact of which plaintiff alone had particular knowledge and yet she failed to testify affirmatively and evaded answering questions regarding this fact, giving rise to an inference that the true facts are adverse to her position. Therefore, since Mrs. Blalock failed to account for the funds withdrawn from the Jackson Parish Bank, it must be presumed that she still had those funds in her possession or control on the date of the dissolution of the community. She must account for these funds just as any other community asset, such as furniture or other movables, in her possession on the date of the separation. We find no error in the judgment of the district court finding plaintiff indebted to the community for the full amount of the withdrawals.
On the question of remand, plaintiff had ample opportunity at the trial of this case to offer evidence as to both the origin and disposition of these funds. She failed or refused to do so and there is no reason to remand the case for further evidence.
The judgment incorrectly reflects the amount for which plaintiff is indebted to the community for the funds withdrawn from the checking account as $4,592.60, whereas the correct amount is $4,206.20. The judgment should be amended accordingly.
*373 (4) Amounts allegedly paid for the benedefendant's separate estate during the marriage.
Plaintiff alleged that during the early part of the marriage certain payments were made in payment of a pre-existing indebtedness owed by defendant.
The trial court held the proof in regard to these matters was insufficient to establish the amounts paid, if any, and, therefore, no accounting could be required of defendant. We concur in this holding.
For the reasons assigned, paragraphs 1, 2 and 4 of the judgment appealed from are amended and recast as follows:
1. (a) An undivided ½ interest in the property hereinafter described is an asset of the separate estate of defendant, Melvin A. Blalock, and an undivided ½ interest in the property hereinafter described is an asset of the community of acquets and gains formerly existing between plaintiff and defendant, Boyce McConathy Blalock and Melvin A. Blalock:
NW¼ of SE¼ and 20½ acres described as follows: Beginning at the Northwest corner of NW¼ of SE¼ and run North 150 yards, thence run East 660 yards to the line of G. B. Barnard's land, then run South 150 yards, thence run West 660 yards to the point of beginning, all in Section 35, Township 16 North, Range 3 West, Jackson Parish, Louisiana.
(b) The property hereinafter described is an asset of the community of acquets and gains formerly existing between plaintiff and defendant, Boyce McConathy Blalock and Melvin A. Blalock:
NE¼ of SE¼ Section 25, Township 16 North, Range 4 West and containing 40 acres more or less, AND ALSO one acre more or less located in the Southeast corner of SE¼ of NE¼ of Section 25, Township 16 North, Range 4 West, and being all of said forty lying South and East of the public road running through said forty, and more particularly described as beginning at the Southeast corner of the said SE¼ of NE¼ of Section 25, Township 16 North, Range 4 West and running North 70 yards, thence Southwest with said road 160 yards, thence due East 150 yards to the point of beginning.
2. The community of acquets and gains formerly existing between plaintiff and defendant is indebted unto the separate estate of defendant in the sum of $2,403.27, being the value of defendant's separate property conveyed in the acquisition of the property described in paragraph 1(b) above.
4. The separate estate of plaintiff is indebted unto the community of acquets and gains formerly existing between plaintiff and defendant in the sum of $9,470, being the amount withdrawn from the Jackson Parish Bank immediately prior to the dissolution of the community.
As amended, the judgment is affirmed and the record remanded to the district court for completion of the partition according to law. Costs of this appeal to be borne by plaintiff and defendant equally.
Judgment amended, and as amended, affirmed. Case remanded for further proceedings.