288 So.2d 673 (1973)
Succession of Joseph MENDOZA.
No. 4804.
Court of Appeal of Louisiana, Fourth Circuit.
March 13, 1973.
Rehearing Denied February 6, 1974.
Racivitch & Wegmann (William J. Wegmann), New Orleans, for appellant.
Before LEMMON, STOULIG, and SCHOTT, JJ.
SCHOTT, Judge.
This is an appeal by the surviving spouse of the decedent from a judgment which classified the only asset of the Succession as separate property of the decedent. The item in question is the sum of $3500 representing death benefits payable to the estate of the decedent under the Seafarers' Union Welfare Plan, hereinafter referred to as the Plan.
The decedent and his widow were married on August 11, 1962. He had become a participant in the Plan before his marriage. The Plan was established pursuant to tripartite agreements between the Union, the employer and a trustee under the terms of which the employer makes a contribution to the trustee at a fixed rate per day for each day the employee works, regardless of the number of hours the employee may work on a given day. To be eligible for the death benefit the employee must have worked a minimum of 90 days during each year, including the last year *674 before his death and at least one day in the last 90 days prior to his death. The employee makes no direct contribution to the Plan and has no individual control over the amount of the employer's contribution to the Plan. That amount is established by the collective bargaining agreement between the employer and the Union. If the employee terminates his employment or has not worked at least one day during the 90 days preceding the date of his death, and a minimum of 90 days during the year preceding the date of his death, he is entitled to no benefits from the Plan whatsoever.
An employee has the right to designate a beneficiary prior to his death, but in the instant case the decedent did not designate a beneficiary so that the death benefit was paid to the administrator of his Succession.
This case is similar to Succession of Rockvoan, 141 So.2d 438, in which this Court held that a lump sum death benefit resulting from a retirement system instituted by the decedent's employer and joined by the decedent prior to the date of his marriage did not form a part of the community between the decedent and his surviving spouse and was therefore the separate property of the decedent. Under that combined plan the employee made voluntary contributions to a fund for the purpose of retirement benefits but the employer made fixed contributions to the fund for death benefits. In holding that the death benefit was the separate property of the decedent, this Court analogized the plan to a contract of life insurance since there was an agreement to pay a specified sum on the death of the member and since the proceeds did not come into existence during the lifetime of the member and consequently did not belong to him or form a part of his estate.
In the instant case appellant relies on the case of Laffitte v. Laffitte, La.App., 232 So.2d 92, where it was held that an employee's interest in a profit sharing trust Plan was community property. There the trust fund consisted entirely of contributions made by the employer as in the instant case, but under the Plan the employee had a vested interest which he would forfeit only if his employment were terminated by the employer for dishonesty or for conviction of a crime. As of the date of the dissolution of the community the employee would have been entitled to 100% of the funds credited to his account if his employment were voluntarily terminated. The Court held:
"In this case defendant has the sole control of the event, the voluntary termination of his employment, that may now cause the payment of 100% of the sum credited to his account."
Appellant contends that the two cited cases are in conflict but there is a fundamental difference between the two, namely, that in Rockvoan the employee had no interest in the fund during his lifetime and while the community was viable, but in Laffitte the employee had a vested interest of which he could voluntarily avail himself during the existence of the community. As in the Rockvoan case, the decedent in the instant case had no vested interest whatsoever in the death benefit and could realize no part of it as long as he lived.
Nevertheless, appellant contends that the payments made to the Fund by the employer are a part of the compensation to the employee for his services during his marriage and consequently the benefits should be treated as community property. But the same argument can be advanced in connection with an insurance contract which is entered into before the marriage but which is maintained during the marriage by payment of premiums out of community funds. In Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12, the Supreme Court held:
"An analysis of the jurisprudence reveals that, where life insurance is taken out in favor of the insured's estate, or of his executors, administrators or assigns, the status of the proceeds of such life insurance, i. e., whether separate or community property, depends upon whether the contract of insurance was made during *675 the existence of the marital community."
Again as in the Rockvoan case, this Plan is analogous to an insurance contract in that the decedent's eligibility, acquired before his marriage, was maintained by his maintaining the minimum employment required of him during his marriage. He was free to name a designated beneficiary which would have had the effect of taking the proceeds out of his Succession entirely. Since the proceeds were, in effect, payable to his estate and since he became a participant in the Plan before his marriage, the proceeds in the hands of the administrator were properly classified as his separate property.
As an alternative plea, the appellant has claimed the marital portion under LSA-C.C. Art. 2382. Our examination of the record convinces us that this article does not apply to the facts of this case. At the time of the decedent's death the surviving spouse had equity in her home which she valued at $6,000 as well as a half interest in a savings account containing $750. The only asset of the decedent was the $3500 death benefit. Under these circumstances, it cannot be said that the husband died "rich" leaving his survivor "in necessitous circumstances" so as to afford to the appellant the right to take out of the succession the "marital portion."
Accordingly, the judgment is affirmed.
Affirmed.
LEMMON, J., concurs with written reasons to follow.
LEMMON, Judge (concurring).
I agree that the problem of characterizing the death benefits in the present case is analogous to the problem involving life insurance proceeds.
Prior jurisprudence in life insurance policy cases holds that the right to receive benefits is an incorporeal thing,[1] and accordingly the proceeds of life insurance payable to an insured's estate are separate property if the policy was brought into the marriage[2] or community property if the policy was acquired during the marriage.[3] The rationale is that this right to receive benefits constitutes an interest in the insurance contract which becomes vested at the moment the contract comes into existence. See Succ. of Verneuille, 120 La. 605, 45 So. 520 (1908). Nevertheless, when the insured names a beneficiary, the proceeds do not form any part of the insured's estate at his death. Succ. of LeBlanc, 142 La. 27, 76 So. 232 (1917).
I respectfully disagree with this rationale, although I state my reasons in a concurring opinion because this court is bound by the authority of these decisions.
My point of disagreement is that the right to receive death benefits never vests in the insured. He simply has the right to name the beneficiary who will receive the benefits upon his death, the event which simultaneously terminates the community. This right is simply a power of appointment, which in my opinion is not "property of married persons" within the contemplation of C.C. art. 2334 and thus is not subject to classification as either separate or community property.
If in the present case Mendoza had exercised his right to appoint a beneficiary, the death benefits would not have constituted "property" includable in his succession assets. I see no reason why the benefits should be Mendoza's succession "property" simply because he failed to name a beneficiary.
The Welfare Plan provided that death benefits are payable to the estate of the decedent when no beneficiary is named. This provision obviously means that the *676 benefits are payable to his heirs; it does not mean that the benefits form part of his succession property. A decedent's estate is technically complete as of the moment of his death.
Since the death benefits are contractually payable to Mendoza's heirs, the crucial question is whether the benefits are payable to the heirs of the community estate or to the heirs of the separate estate.
The determination as to which heirs receive the death benefits is obviously a different question than the determination as to which heirs receive properties or incorporeal rights which the decedent possessed at his death and which constituted his succession "property." These properties or rights can be classified as community or separate by reference to the time and manner of acquisition, but the right to receive proceeds of death benefits was never acquired by Mendoza and should not be classified in the same manner.
I suggest an approach whereby the determination as to which heirs are entitled to death benefits be made by reference to the source of the funds which brought the benefits into fruition. In the present case Mendoza's employer contributed all of the funds into the plan. As a practical matter, these contributions constituted additional employment compensation to Mendoza. Had Mendoza received these funds as compensation during the marriage, they would have been classified as community property and would have been available for use by and on behalf of the community. I therefore suggest that a fair and equitable method of distribution is to divide the benefits proportionatelythe heirs of the community estate to receive a percentage of the death benefit proceeds in proportion to the contributions made during the existence of the community, and the heirs of the separate estate to receive a percentage in proportion to the contributions made when no community was in existence.
Under the present jurisprudence classification is based absolutely and arbitrarily on the date that a "right" supposedly came into existence. Under this rationale Mendoza could have entered the Welfare Plan one day before his marriage and worked for thirty years thereafter, and upon his death his wife would not be entitled to any of the death benefits for which community income was almost entirely responsible (although she might be entitled to reimbursement by the separate estate of one-half of the amount of the contributions.) This is hardly the intention of C.C. art. 2334, which defines separate property as "that which either party brings into the marriage."
NOTES
[1] C.C. art. 470.
[2] In re: Moseman's Estate, 38 La.Ann. 219 (1886).
[3] Succ. of Buddig, 108 La. 406, 32 So. 361 (1902)