304 So.2d 53 (1974)
TEACHERS' RETIREMENT SYSTEM OF LOUISIANA
v.
Mrs. Susan Gueydan VIAL et al.
No. 9940.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
Rehearing Denied December 16, 1974.
Writ Refused January 31, 1975.
*54 Gordon M. White, Baton Rouge, for defendant-appellant.
William T. Reeves, Jr., Baton Rouge, for plaintiff-appellee.
Gordon B. Hyde, New Orleans, for defendant-appellee.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
This concursus proceeding was instituted by the Attorney General of the State of Louisiana to have judicially determined the disposition of the accumulated funds of Richard J. Vial, Jr., decedent, in the Louisiana Teachers' Retirement System, said funds being claimed individually by Richard Vial's daughter, Patsye Vial Keller, and also by his second wife, Susan Gueydan Vial. In accordance with LSA-C.C.P. Art. 4651 et seq., the funds were deposited by the Attorney General in the Registry of the Court.
This suit was tried on stipulated facts in the trial court. Those facts reveal that on August 1, 1936, when the Louisiana Teachers' Retirement System was established, Richard J. Vial, Jr., became a member. Some time thereafter he named his first wife, Ethel, as his beneficiary to the funds generated under that system. On April 11, 1970, Ethel Vial died, and following her death Richard Vial named his daughter, Patsye Vial Keller, as his beneficiary in the fund. On August 4, 1971, a judgment of possession with respect to Ethel Vial's estate decreed Patsye Vial Keller as the sole heir of her mother and sent her into possession of all the community property left by her mother. Richard Vial was also recognized as the surviving spouse in community. On October 22, 1971, Richard Vial and Susan Gueydan executed a marriage contract renouncing the community of acquets and gains and declaring all property acquired before and after the marriage to be the separate property of each. Subsequently, on October 28, 1971, Richard Vial married Susan Gueydan. On *55 November 4, 1971, Richard Vial then designated his second wife, Susan, as beneficiary in the retirement fund and revoked all previous designations.
When Richard Vial died on January 13, 1973, he left with the teachers' retirement system an accumulated fund of $29,480.79. Patsye Vial Keller, the sole heir in both her mother's and father's successions, claims all of the aforesaid benefits as the forced heir of her father. In order to have the proceeds declared as a part of his estate, she has contested the constitutionality of that section of the Teachers' Retirement Act which establishes the method of disposing of the contributions accumulated to a member's credit in the event of his death prior to retirement.
The trial court rejected Patsye Vial Keller's claim of unconstitutionality of the statute and awarded the proceeds accumulated under the system to Susan Gueydan Vial in accordance with the beneficiary provisions made by Richard Vial prior to his death. From this decision, Patsye Vial Keller has appealed.
LSA-R.S. 17:573,[1] a basic provision of the Teacher's Retirement Act, provides that these contributions will be exempt from seizure, sale and taxation and will be unassignable except as otherwise provided. Included within this latter exception of nonassignability is R.S. 17:640,[2] which provides that in the event of a member's death prior to retirement the accumulated contributions to his credit shall be payable on demand to his designated beneficiary.
Appellant argues that the Teachers' Retirement Act is unconstitutional in that it violates Article 4, Section 4,[3] of the Louisiana Constitution, for the reason that it gives effect to an informal or invalid will. She further cites Article 1570[4] of the Louisiana Civil Code providing that no disposition mortis causa shall be made otherwise than by last will and testament. Particularly, appellant states that LSA-R. S. 17:573 and 17:640 permit members of the teachers' retirement system to designate a beneficiary to receive accumulated contributions in the event of death by merely completing a pre-printed form entitled *56 "Teachers' Retirement System of LouisianaBeneficiary Blank."
A similar argument was considered in Succession of Rockvoan, 141 So.2d 438 (La.App. 4th Cir. 1962), in which a retirement system similar to the Louisiana Teachers' Retirement System was under consideration. That case involved a contest over the death benefits provided for by the decedent's employer. There the contest was between the decedent's second wife, who attempted to have the death benefits of the retirement system included in the community, and the son of decedent by his first wife, who claimed entitlement thereto as a named beneficiary by his father. The rules and regulations of the retirement system under consideration in that case provided that death benefits would be paid to the beneficiary designated by the employee in his application for membership. Quoting from the opinion, the Court set out counsel's argument as follows:
"Counsel for the appellant administratrix argues that the decedent's designation of a beneficiary in his application blank in effect constitutes either a donation mortis causa or a donation inter vivos and that in either case the designation would be void as lacking proper form citing LSA-C.C. Articles 1536, 1570, 1571, 1574, and Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730. He further argues that a death benefit payment under a retirement system is community property and must be included in the decedent's community estate, citing Daigre v. Daigre, 228 La. 682, 83 So.2d 900, 55 A.L.R.2d 951; Succession of Scott, 231 La. 381, 91 So.2d 574." (Succession of Rockvoan, 141 So.2d at 440)
For the identical reasons as stated by our brothers on the Fourth Circuit, we reject appellant's argument, and we take the liberty of quoting their language:
"While we do not hold that the [Teachers'] Retirement System with which we are dealing constitutes a contract of insurance, it nevertheless has features closely analogous thereto. This is especially true of its death benefit provisions. We are unable to distinguish these provisions from a contract of life insurance in that they constitute an agreement to pay a specified sum on the death of the member, and like life insurance, the proceeds or avails thereof do not come into existence during the lifetime of the member, and consequently do not belong at any time to him nor do they form a part of his estate.
"It is well established by the decisions of our Supreme Court that the proceeds or avails of life insurance, if payable to a named beneficiary and not to the estate or to the heirs, executors or administrators of the insured, belong to the beneficiary named in the policy and are not considered as a part of the estate of the insured, the reason being that the proceeds or avails of life insurance do not come into existence during the lifetime of the insured, and do not at any time belong to him but pass by virtue of the contract directly from the insurer to the beneficiary named in the policy. See Succession of Rabouin, 201 La. 227, 9 So.2d 529, 142 A.L.R. 605, and cases there cited.
"And since the proceeds of life insurance form no part of decedent's estate the rules of the Civil Code relating to donations inter vivos or mortis causa have no application as respects life insurance policies, nor are the proceeds subject to community rights. Sizeler v. Sizeler, 170 La. 128, 127 So. 388; Ticker v. Metropolitan Life Insurance Co., 11 Orleans App. 55, 59; Pearce v. National Life & Accident Ins. Co., 12 La.App. 608, 125 So. 776; Grayson v. Life Ins. Co. of Virginia, La.App., 144 So. 643; In re Sun Life Assur. Co. of Canada, La.App., 155 So. 399.

* * * * * *
"Since we are unable to distinguish the death benefit features of the [Teachers'] Retirement System from life insurance *57 it is our opinion that the law relative to life insurance in the particulars above set forth applies equally to the matter before us." (Succession of Rockvoan, 141 So.2d at 440, 441)
In the Succession of Mendoza, 288 So.2d 673 (La.App. 4th Cir. 1973), the Fourth Circuit again took the same approach in resolving a controversy over the proceeds of a retirement plan. The only asset of that succession was death benefits payable to the estate of the decedent under the Seafarer's Union Welfare Plan. Under the plan the employee had a right to designate a beneficiary prior to his death but did not do so. The death benefits, therefore, were paid to the administrator of his estate. The Court noted the similarity of the case before it to the Rockvoan case in that the decedent had no vested interest whatsoever in the death benefits and could realize no part of it as long as he lived. The surviving spouse of decedent, of course, contended that the proceeds belonged to the community. In resolving the issue, the Court analogized the retirement plan's death benefit provisions to a life insurance contract and applied the relevant law thereto.
The Second Circuit had previously made the same comparison in the case of Scott v. Scott, 179 So.2d 656 (La.App. 2nd Cir. 1965), in referring to the nonassignability provisions of LSA-R.S. 17:573, stating:
"* * * Such are comparable to the rights of a beneficiary under a life insurance policy where no right is reserved to the insured to change the beneficiary. * * *" (Scott v. Scott, 179 So.2d at 657)
Based on such an analogy, the Court concluded that funds in the retirement system belonged to a participating wife or husband's separate estate and their exclusion from the inventory as community property was proper.
Going one step further from such a concept, other cases, including one from this circuit, have held that if the funds contributed to the retirement system were community earnings, the separate estate of the testator would be indebted to the other spouse for one-half of the increase in the fund which occurred during the existence of the community. Moore v. Moore, 187 So.2d 145 (La.App. 2nd Cir. 1966), writ refused, 249 La. 451, 187 So.2d 438; Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968); Blalock v. Blalock, 259 So. 2d 367 (La.App. 2nd Cir. 1972).
We note that other jurisdictions have used this same analogy. Under the annotation "Rights in Survival Benefits Under Public Pension or Retirement Plan as Between Designated Beneficiary and Heirs, Legatees, or Personal Representative of Deceased Employee," 5 A.L.R.3d 644, 649, 650, we find:
"In determining the right between a beneficiary who has been designated by an employee to receive survival benefits under a public pension or retirement plan, on the one hand, and the employee's heirs, legatees, or personal representative as to whom the employee might have been expected to wish that they should receive the fund at his death, many courts in holding that the beneficiary was entitled to the survival benefits when his designation was properly on file with the particular pension or retirement system, unaltered and unrevoked at the time of the employee's death, have based their decisions on the ground that the rules governing the designation of beneficiaries under life insurance contracts should be applied to the designation of beneficiaries for survival benefits under a public pension or retirement plan.

* * * * * *
"Thus, in Rogers v. Rogers (1963, Fla. App.) 152 So.2d 183, 5 ALR 3d 637, the court, referring to a statute providing that in case a member of the teachers' retirement system should die before retirement the amount of his accumulated contributions *58 should be paid to the beneficiary nominated by him by written designation duly executed and filed with the board of trustees, and otherwise to his executors or administrators, stated that the benefits provided for the designated beneficiary under the retirement statute were in the nature of the proceeds of an annuity or life insurance contract; that their disposition was controlled by the general rule governing such contracts, that the teachers' retirement system primarily contemplated benefits more in the nature of an annuity than a strict property interest in the accumulated fund, and that the fact that when a member ceases to be a teacher, except by death or retirement, he is entitled to be paid the amount of his accumulated contributions is comparable to provisions usually found in modern life insurance contracts fixing a cash sum to be paid to the insured upon surrender of the contract. The court then concluded: `Under the [retirement] system, as with most life insurance contracts that are owned by the person on whose life maturity of the policy depends, the teacher has an absolute right to change the beneficiary. However, this does not in any manner affect the contractual character of the transaction between the insurer and the insured; it is consonant therewith. We know of no practical or legal reason for applying a different rule to the fund accumulated in favor of a teacher under the retirement system, and the statutes do not provide such.'" (Emphasis supplied)
Since Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930), it is no longer contested that Civil Code authorities relating to donations inter vivos and mortis causa have no application to life insurance policies, and the proceeds from insurance contracts form no part of the estate of an insured. Also, since the accumulated funds of decedent in the teachers' retirement system form no part of the estate of the deceased and inure to the beneficiary directly through decedent's designation of said beneficiary under and by virtue of constitutional and statutory authority,[5] it is an irrelevant inquiry as to whether the procedure by which such funds were transferred complied with laws of descent and distribution or is invalid as to form, in violation of the codal articles prescribing the making of donations mortis causa.
Appellant argues that the funds paid into the Louisiana Teachers' Retirement System by decedent consisted almost entirely of community funds and that under the Moore, Broyles and Blalock cases, cited supra, the separate estate of the teacher is then required to reimburse the other spouse's estate for one-half of the value of the contributions to the system made during the existence of the community. Assuming arguendo the validity of this argument, we fail to see how it in any way benefits appellant. Appellant was the sole heir of both her mother and father, and should her father's estate be required to pay such contributions, she, as his sole heir, would be required to make such payments to herself as the sole heir of her mother. As both debtor and creditor of the same amount, the debt would be extinguished by confusion. LSA-C.C. Art. 2217.[6]
Also without merit are appellant's other arguments concerning the unconstitutionality of the teachers' retirement system as constituting a denial of due process of law in violation of Article 1, Section 2, of the Louisiana Constitution, and exceeding the authority granted by Article 12, Section 23, of the Louisiana Constitution, which article is the constitutional authority for the establishment of the Louisiana *59 Teachers' Retirement Fund. We find no authorities to substantiate these arguments, nor have any been cited by appellant. Clearly, the teachers' retirement system operates equally and fairly to those participants in the system and no one thereunder is denied due process or equal protection of the laws. Additionally, the act creating the retirement system does not exceed its authority by depriving appellant of any independent substantive right as heir of decedent. Appellant's argument on this point is essentially the same as stated above in support of her contention that the act violated Article 4, Section 4, of the Louisiana Constitution. As pointed out more fully hereinabove, appellant never became an heir to any of the retirement proceeds, as they never formed a part of her father's estate.
For the above reasons, the judgment of the trial court is affirmed, and appellant is cast for all costs of this appeal.
Affirmed.
NOTES
[1] R.S. 17:573 reads as follows:

"The right of a person to a pension, an annuity, or a retirement allowance, or to the return of conntributions; the pension, annuity or retirement allowance itself; any optional benefit or any other right accrued or accruing to any person under the provisions of this Part; and the moneys in the various funds created by this Part are exempt from any state or municipal tax, all state income tax, and exempt from levy and sale, garnishment, attachment or any other process whatsoever, and shall be unassignable except as otherwise specifically provided in this Part. As amended Acts 1952, No. 418, § 1."
[2] R.S. 17:640 provides, in part, as follows:

"* * * In the event of death prior to retirement, the accumulated contributions of a member credited to his individual account in the annuity savings fund shall be payable on demand to his designated beneficiary, if any, otherwise to his estate, unless benefits are payable to a surviving spouse under the provisions of R.S. 17:631.1. The payment of any such refund to * * * the member's designated beneficiary, if any, or the estate of a deceased member shall discharge all obligations of the retirement system on account of any creditable service rendered by the member prior to payment of the refund, and acceptance of such refund by * * * the member's designated beneficiary, if any, or the estate of a deceased member shall constitute a release of all accrued rights of every kind and nature against the retirement system. Amended by Acts 1971, No. 5, Section 5."
[3] Article 4, Section 4, of the Louisiana State Constitution provides, in part:

"The Legislature shall not pass any local or special law on the following specified subjects:
* * * * *
"Changing the law of descent or succession.
* * * * *
"Giving effect to informal or invalid wills or deeds, or to any illegal disposition of property."
[4] Article 1570 of the Louisiana Civil Code reads, in part:

"No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated."
[5] Article 12, Section 23, Louisiana Constitution, and Act 83 of 1936, as amended, now LSA-R.S. 17:571 et seq.
[6] LSA-C.C. Art. 2217 states:

"When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation."