387 So.2d 21 (1980)
Thelma Leroy THRASH
v.
Willie THRASH.
No. 7473.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1980.
*22 Whitehead & McCoy, C. R. Whitehead, Jr., Natchitoches, for defendant-appellant.
John G. Williams, Natchitoches, for plaintiff-appellant.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
The sole issue on appeal concerns the determination of a divorced husband's interest, if any, in his former wife's pension rights resulting from her participation in the Louisiana State Teachers Retirement System insofar as said rights are attributable to her employment during the existence of the community.
The issue arises in the context of a suit to partition the community's assets following its dissolution as the result of a separation and divorce. The trial court held that the husband's interest was limited to one-half of $11,373.23, the amount contributed to the retirement system during the existence of the community. We reverse and hold that the rights in the Teachers Retirement System which were acquired by the wife, as a result of her employment during the existence of the community, are community property and that the husband is therefore entitled to be recognized as owner of onehalf of that portion of the benefits payable to the wife attributable to her employment during the community of acquets and gains.
The record reflects that Reverend Willie Thrash and Thelma Leroy Thrash were married on July 17, 1941. Mrs. Thrash sued for separation on December 13, 1976 and a judgment of separation was rendered in her favor on February 2, 1977. A judgment of final divorce was rendered on May 18, 1978. On October 11, 1978 Reverend Thrash petitioned to partition assets of the community of acquets and gains.
Among the assets alleged by Reverend Thrash to be community property, the classification of which by the trial court forms the basis of this appeal, are Mrs. Thrash's retirement benefits accrued under the Louisiana Teachers Retirement System and a certificate of deposit for $14,000.00. It is undisputed that Mrs. Thrash taught forty years for the State of Louisiana, nine of which preceded her marriage to Reverend Thrash. Mrs. Thrash retired as of June 1, 1972 whereupon she began receiving monthly benefits from the retirement system. By *23 joint stipulation it was established that the total contributions made by Thelma Thrash to the retirement system during the community, plus accrued interest thereon, totalled $11,373.23. Attached to said stipulation was an exhibit showing the retirement benefits received by Mrs. Thrash from her date of retirement, June 1, 1972, through April 1,1978. Also attached to said stipulation was a letter from an Assistant Secretary-Treasurer of the Teachers Retirement System which set forth the actuarial computations relative to that portion of Mrs. Thrash's retirement benefits which were acquired during the existence of the community. According to said letter Mrs. Thrash accumulated 31 years of service credit and 1.50 years of sick leave credit or a total of 32.50 years of creditable service during the existence of the community. Mrs. Thrash asserts that her retirement benefits are her separate property, and in reference thereto, she asserts that, although bought during the existence of the community, the certificate of deposit for $14,000.00 was bought with her allegedly separate retirement benefits and is therefore also separate property.
In a judgment dated February 27, 1979, the trial judge held that Reverend Thrash was entitled to the sum of $6,134.49, which represented one-half of that portion of her retirement benefits received after the dissolution of the community and attributable to her service and earnings during the existence of the community. The period covered by this allocation stems from December 13, 1976 through January 1979. Further, the trial court ordered Reverend Thrash to be recognized as the owner of one-half of 79% of each future retirement check received by Thelma Thrash from the Louisiana Teachers Retirement System, commencing with the retirement check due for the month of February, 1979. As to the certificate of deposit the trial court held that since Mrs. Thrash had failed to make a declaration pursuant to LSA-C.C. Article 2386 the certificate of deposit was presumed to be community property and Reverend Thrash was entitled to one-half of said certificate of deposit. Following the grant of a new trial, the trial judge reversed his former judgment and ruled that Reverend Thrash would not be entitled to any claim on Mrs. Thrash's monthly retirement check from this system as Mrs. Thrash's rights in the retirement system constituted her separate property. The trial court held that Reverend Thrash's recoverable interest in the retirement funds was limited to one-half of $11,373.23 which represents the contributions from salary made by Mrs. Thrash during the existence of the community. Judgment reflecting the latter ruling was rendered and signed on June 27, 1979. The trial court's original disposition concerning the certificate of deposit was unchanged in the second judgment. From this judgment both parties have appealed.
The trial court apparently relied on a line of jurisprudence starting with Scott v. Scott, 179 So.2d 656 (La.App. 2nd Cir. 1965) and including Broyles v. Broyles, 215 So.2d 526 (La.App. 1st Cir. 1968) and Blalock v. Blalock, 259 So.2d 367 (La.App. 2nd Cir. 1972) as the basis for its decision. The cited cases hold that a member's interest in the State Teachers Retirement System established by LSA-R.S. 17:571 et seq., is the separate and paraphernal property of the member.
The Court in Scott v. Scott, supra, in reaching the conclusion that said benefits were the separate property of the member-spouse focused on the limited membership in the system and the exemption provisions of LSA-R.S. 17:573,[1] and particularly the unassignability language contained therein, and on that basis, analogized the rights of a *24 member of the retirement system to the rights of a beneficiary under a life insurance policy where no right is reserved to the insured to change the beneficiary. The courts in Broyles and Blalock reached identical conclusions by employing the reasoning set forth in Scott.
However appropriate the analogy employed in Scott v. Scott, supra, we do not follow that line of jurisprudence in the instant suit as recent Supreme Court decisions mandate a different approach in the determination of the community's interest in deferred compensation plans.[2]
In T. L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1976) and Sims v. Sims, 358 So.2d 919 (La.1978) the Supreme Court clearly set forth the guidelines to be followed in determining the community's interest in deferred compensation plans, be they private or public, acquired during the existence of the community.
In T. L. James & Company, Inc. v. Montgomery, Justice Tate, as organ for the Court on rehearing, stated as follows:

"Each contribution of the employer to the funds entitles the employee or his beneficiary to share subsequently in the funds' proceeds; when made during the community, the property right to share ultimately in the proceeds thereby acquired by the wage earner, is `acquire(d) during the marriage', Civil Code Article 2402 and is thus a community asset. Civil Code Article 2334; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956). Therefore, the value of the right to share proportionately in the fund, which right is contractually acquired by virtue of each contribution, falls into the community during which the contribution is made; for by each contribution, when made, the employee (or his beneficiary or estate) has acquired a right to share pro rata in the proceeds ultimately payable from the funds to the employee or his contractual beneficiary or his estate.

The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of a marriage, the right-to-share is a community asset, which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 174-75 (1956). When a community is dissolved, the employee's spouse is thus entitled to be recognized as the owner of one-half the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community (i. e., even though it may not by the contract be payable at that time). Id.; Laffitte v. Laffitte, 253 So.2d 120 (La.App. 2d Cir. 1971), noted 33 La.L.Rev. 222-23 (1973). However, when the proceeds do become payable under the contract to the employee or his beneficiary or estate, the spouse is entitled at that time to receive payment as owner of her share of the proceeds, based upon the value of the right-to-share acquired during the community formerly existing between her and the wage earner.

For the reasons more fully set forth in our original opinion, we are unwilling to extend by analogy the principles applicable to the purchase of life insurance policies to the acquisition of community interests in retirement or profit-sharing funds such as those at issue. Jurisprudentially, as confirmed legislatively, life insurance interests are treated sui generis as an exception to the usual rules of acquisition of property interests during a community." (footnotes omitted)

*25 With reference to the last paragraph quoted above, the footnote to said paragraph contains the following language.
"Likewise inapplicable, and inappropriate to extent by analogy (since the subject of special legislation), are the decisions holding that teachers' retirement benefits are the separate property of the teacher rather than a community asset and are receivable by the contractual beneficiary, not the heir. Teachers' Retirement System v. Vial, 317 So.2d 179 (La.1975). See also 27 La.L.Rev. 457-58 (1967)."
We do not view the language in the above footnote as a comment by the court on the correctness of the Scott line of cases. Nor do we find said footnote as controlling as (1) there was no question before the court in Montgomery concerning teacher retirement benefits; (2) the parenthetical comment within the footnote has dubious meaning as there is no "special legislation" which specifically provides that benefits under the teachers retirement system are the separate property of the teacher-spouse; and, (3) finally, any doubt that the language of said footnote might have cast on our decision today has been dispelled by the Sims decision.
In Sims, supra, the question before the court concerned the divorced wife's interest in her former husband's rights in a federal retirement system (5 U.S.C. § 8331 et seq.) insofar as they were attributable to his employment during the existence of the community. The court reaffirmed its holding in Montgomery and acknowledged the wife's right-to-share in the retirement plan to the extent said rights were acquired during the marriage. In doing so, the Supreme Court rejected the reasoning which formed the basis of the Scott decision. The federal retirement plan has an exemption provision, 5 U.S.C. § 8346(a)[3], which forbids the execution-sale or non-family assignment of the proceeds of the plan. Citing Moon v. Moon, 345 So.2d 168 (La.App. 3rd Cir. 1977) and Swope v. Mitchell, 324 So.2d 461 (La.App. 3rd Cir. 1975) the Supreme Court stated that such provisions do not preclude the classification of federal retirement rights as community property. Following this reasoning, it is likewise true that a state exemption statute, i. e., one forbidding the execution-sale and limiting the assignability of retirement plan proceeds, such as LSA-R.S. 17:573, supra, does not preclude the classification of state retirement rights as community property.
Exemption provisions such as 5 U.S.C. § 8346 in the federal plan and LSA-R.S. 17:573 in the State Teachers Retirement System plan are not dispositive of ownership as they serve no classificatory function. The purpose of such exemptions serve merely to protect the funds contributed into the public retirement system by the employee and preserve the integrity of said funds and the benefits accrued thereon for the purpose of providing a pension for the public employee in retirement.
On the basis of Montgomery and Sims we hold that in the instant case the retirement benefits acquired during the marriage are community property and the divorced husband has a one-half interest in that portion of the wife's state teachers retirement benefits acquired during the marriage which may be calculated as follows:
Portion of pension
attributable to creditable
service during
existence of community monthly
 (31 years) = 77.5% × ½ × annuity
Pension attributable to
total creditable service
(40 years)
Reverend Thrash is therefore entitled to 38.75% (77.5% × ½) of every pension check that Mrs. Thrash has received since the dissolution of the community and will hereafter receive.[4]
*26 With regard to the $14,000.00 certificate of deposit we affirm the trial court's determination as to the community status of this item of property. We do so, not on the basis of the trial court' opinion that Mrs. Thrash had failed to comply with LSA-C.C. Article 2386 et seq., rather we hold, based upon our review of the record, that Mrs. Thrash failed to overcome the presumption set forth in LSA-C.C. Article 2405.[5]
For the above and foregoing reasons we reverse that part of the judgment appealed from limiting Willie Thrash's interest in his former wife's retirement benefits to one-half the community fund contributed to same, and order, adjudge and decree that Willie Thrash is entitled to 38.75% of every pension check Thelma Leroy Thrash has received or will receive from the Louisiana Teachers Retirement System since the dissolution of the community. In all other respects the trial court judgment is affirmed. Costs of this appeal are to be paid one-half (½) by plaintiff and one-half (½) by defendant.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] LSA-R.S. 17:573 provides as follows:

"The right of a person to a pension, an annuity, or a retirement allowance, or to the return of contributions; the pension, annuity or retirement allowance itself; any optional benefit or any other right accrued or accruing to any person under the provisions of this Part; and the moneys in the various funds created by the Part are exempt from any state or municipal tax, all state income tax, and exempt from levy and sale, garnishment, attachment or any other process whatsoever, and shall be unassignable except as otherwise specifically provided in this Part."
[2] As to the inappropriateness of the analogy of rights under the retirement system to life insurance see Judge Marvin's forceful dissent in Roberts v. Roberts, 325 So.2d 674 (La.App. 2nd Cir. 1976); and the discussion in The Work of the Louisiana Appellate Courts for the 1965-1966 TermMatrimonial Regimes, 27 La.L. Rev. 457-58 (1967).
[3] 5 U.S.C. § 8346 provides as follows:

"(a) The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws...."
[4] It is without dispute that Mrs. Thrash had forty (40) years of service in the State's school system, nine of which were served prior to her marriage to Rev. Thrash. Although, according to exhibit 2 attached to the stipulation of the parties, Mrs. Thrash accrued an additional 1.50 years of creditable service, by reason of accumulated sick leave, during the existence of the community, we adopt the fraction 31/40 as the basis of community participation because the record does not set forth with exactness Mrs. Thrash's total creditable service and we presume that she would be entitled to a proportional additional service credit for accumulated leave during the nine year period antedating her marriage.
[5] LSA-C.C. Article 2405, at the date of dissolution, provided as follows:

"At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."
We note that Articles 2386 and 2405 have been repealed and replaced by Acts 1979, No. 709 § 1, eff. 1/1/80, in the form of Articles 2336, 2338, 2339 as to the substance of the former Article 2386 and the presumption of community is now set forth in Article 2340.