484 So.2d 829 (1986)
Elizabeth Dubus MICHEL
v.
Melvin M. MICHEL.
No. CA 84 1308.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
*830 Allen M. Posey, Jr., Baton Rouge, for plaintiff-appellee Elizabeth Dubus Michel.
Chapman L. Sanford, Baton Rouge, for defendant-appellant Melvin M. Michel.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
This is a suit to partition community property.
The parties were married on February 4, 1956. A judgment of separation, based on mutual fault of the parties, was rendered on January 13, 1981. The plaintiff, Elizabeth Dubus Michel, filed a petition seeking a partition of community property. After trial, ending August 1, 1983, the parties entered into a written stipulation as to certain issues. The remaining issues were presented for the trial court's adjudication. Judgment was rendered on December 28, 1983, with comprehensive written reasons. The defendant, Melvin M. Michel filed this appeal and the plaintiff answered raising several additional questions for review.

I.

CLAIMS FOR REIMBURSEMENT
This appeal raises three issues as to reimbursement, two by Mr. Michel and one by Mrs. Michel.
1. Payment of the family home mortgage note.
From September of 1980 through April of 1983, Mr. Michel made monthly mortgage payments in the amount of $948.90 on the family home located at 809 Mouton Street in the City of Baton Rouge. The parties have stipulated the total of these payments amount to $29,825.00. The trial court denied the reimbursement sought by Mr. Michel of one-half the stipulated total. The trial court correctly stated:
"LSA-C.C. Article 155 provides that the Judgment of Separation carries with it the dissolution of the community of acquets and gains and thereafter the parties occupy the status of co-owners of the property. The general rule of law is to the effect that a co-owner has the right to use the common property without the payment of rent. Arcemont v. Arcemont, 162 So.2d 813 (La.App. 4th Cir.1964). Further, it is also well settled that a co-owner in possession is entitled to be reimbursed expenses for the preservation of the common property following the judgment of separation of bed and board. Arcemont v. Arcemont, supra, and Kennedy v. Kennedy, 391 So.2d 1193, (La.App. 4th Cir.1980)."
However, the trial court erred in this instance when it provided:
"Nevertheless, equity commands a determination that where as in this case one co-owner is successful in barring another co-owner from any use of the premises, reimbursement for expenses should be denied."
It is a fact Mrs. Michel was denied an effective use of property which she co-owned because Mr. Michel obtained a contempt order embodying such a denial. However, to deny Mr. Michel reimbursement for expenses paid to preserve this property because he sought a contempt order is not an appropriate remedy. The appropriate remedy for Mrs. Michel in this instance was to obtain a partition by licitation of the property or to seek review of *831 the contempt ruling because it took from Mrs. Michel the use of her property. It is clear the payments accrued to Mrs. Michel's benefit as co-owner. Foreclosure and monetary loss to both parties would have resulted from failure to satisfy the mortgage obligations.
As well it would be equitable to allow Mr. Michel to be charged a reasonable rent for his use of this house to the exclusion of Mrs. Michel. However, as the trial court has already noted, the law is well settled a co-owner can not be charged rent. Therefore, Mr. Michel is entitled to reimbursement from the date the petition for separation was filed, September 23, 1980,[1] in the amount of $14,912.50, the stipulated total of payments, $29,825, divided by two.
2. Installation of a new walkway for the family home.
The trial court held:
"The parties have agreed that an old walkway to the front of the house at 809 Mouton Street was removed prior to their separation. Following their separation, Melvin Michel completed the new walkway at a cost of $1,266.00. The court is of the opinion that the work was necessary and the improvement enhanced the house. Sharp v. Zeller, 114 La. 549, 28 So. 449. Accordingly, Mrs. Michel should recompense Mr. Michel to the extent of one-half or the sum of $633.00."
In her answer to appeal, Mrs. Michel raises this conclusion as error, although it is not raised or argued in brief. We find this assignment to be without merit. The trial court's conclusion is a determination of fact which we find supported by our examination of the record. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
3. $6,580 in interest paid by Mr. Michel.
The facts concerning this payment by Mr. Michel are provided by the trial court which stated:
"The parties agree that Melvin Michel paid $6,580.00 in interest on sums owed by the community originally represented by promissory notes. Further relevant facts concerning this issue which are agreed to by the parties are as follows:
Prior to the filing of an action for separation there existed community promissory notes totaling TWENTY-SIX THOUSAND, THREE HUNDRED TEN AND NO/100 ($26,310.00) DOLLARS. MELVIN MICHEL, after termination of the community, executed one note in the amount of TWENTY-NINE THOUSAND, ELEVEN AND 39/100 ($29,011.39) DOLLARS. The proceeds received from the execution of that note were issued to pay the community notes totaling TWENTY-SIX THOUSAND, THREE HUNDRED TEN AND NO/100 ($26,310.00) DOLLARS, plus a ONE THOUSAND, FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS separate indebtedness of MELVIN MICHEL, plus a ONE THOUSAND, TWO HUNDRED AND NO/100 ($1,200.00) DOLLARS debt, the status of which is disputed. The note was later separated, extended, and partially paid through the sale of community assets. The parties have agreed that MELVIN MICHEL paid SIX THOUSAND FIVE HUNDRED EIGHTY AND NO/100 ($6,580.00) DOLLARS in interest on that portion of the large note that was used to pay community debts. The parties have settled the issue concerning the ONE THOUSAND, *832 FIVE HUNDRED AND NO/100 ($1,500.00) DOLLARS separate debt of MELVIN MICHEL and have settled on an interest figure attributable to the ONE THOUSAND, TWO HUNDRED AND NO/100 ($1,200.00) DOLLARS debt which interest figure is included in the SIX THOUSAND, FIVE HUNDRED EIGHTY AND NO/100 ($6,580.00) DOLLARS stipulated interest.
It is agreed that MELVIN MICHEL paid SIX THOUSAND, FIVE HUNDRED EIGHTY AND NO/100 ($6,580.00) DOLLARS in interest on the consolidation, renewal, and extension of such notes."
La.Civ.Code art. 2365 provides:
"If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets."
Mr. Michel contends his entitlement to reimbursement includes one-half of $6,580 because he contends the interest charged due to the refinancing should be included in "the amount or value that the property had at the time it was used." (Emphasis ours.) We agree with this contention.
The separate property used by Mr. Michel to satisfy the community obligation in this instance had a cost to Mr. Michel which included both the principal used to refinance the community obligation and his subsequent interest payments. This cost is to be equated with concept of value embodied in art. 2365. There is no evidence which establishes Mr. Michel acted in any way against the interests of the former community. To the contrary the trial court found:
"While it may be true that Mr. Michel did not obtain Mrs. Michel's approval for the renogotiation (sic) of the community promissory notes, it would have probably been a vain and useless request since she testified that she had no funds or resources in which to pay off these obligations. Mr. Michel's action in refinancing of the community's obligation was necessary under the circumstances and quite probably protected Mrs. Michel from litigation. For this reason, the court finds that Mr. Michel is entitled to a reimbursement of one-half of the interest payments made, to-wit the sum of $3,290.00." (Emphasis ours.)
Mrs. Michel contends the principal borrowed by Mr. Michel should be considered an interest free loan to the former community. However, we agree with the trial court such a contention is not supported by the current state of the law. The trial court details:
"The court finds no jurisprudential authority which would support a determination that the loan should be interest free. However, counsel for Mrs. Michel cites, Comment, Termination of the Community, 42 La.L.Rev. 789, 800-801 (1982); wherein it is stated:
`In four situations, the new articles provide that the measure of reimbursement is "one-half of the amount or value" of the property used. This measure of reimbursement applies when a separate obligation has been satisfied with comminity (sic) property, when a community obligation has been satisfied with separate property, when community property has been used for the benefit of separate property, and when separate property has been used for the benefit of community property. In these instances the property used is treated "as an interest free loan."'
Also Comment (d) to La. Civil Code Article 2364 states:

*833 `Article 2364 instead treats community property used to satisfy a separate obligation as an interest-free loan.'
It is the court's opinion that these code articles allude to the situation where the payments on the loans are made by the community to the separate property and visa viz (sic), during the existence of the community (emphasis supplied by the court) and not after the dissolution of the community as is the case here. In addition, Comment (d) pertain only to Article 2364 dealing with the use of community assets for the benefit of separate property and the same comment does not appear under Article 2367 which deals with the use of separate assets for the benefit of community property. Therefore, the application of these code article (sic) is inappropriate to the factual circumstances presented herein."
Accordingly, we find the trial court is correct in holding Mr. Michel is entitled to reimbursement for this interest expense.

II.

CLASSIFICATION OF THE PARTIES' INCOME AFTER THE TERMINATION OF THE COMMUNITY
1. The writings of Mrs. Michel.
The trial court ordered:
"MELVIN MICHEL is granted a twenty-five percent (25%) interest in the value or revenues which have been or may be realized from all literary works of ELIZABETH DUBUS MICHEL partially completed prior to the date of filing of separation...."
except,
"MELVIN MICHEL is granted a five percent (5%) interest in the value and receipts from the novel known as The Cajuns."
Mr. Michel assigned as error the trial court's grant of less than a 50% interest in all of Mrs. Michel's works. As a basis he contends the works were community property at dissolution and Mrs. Michel has not established the value of this community property was enhanced by necessary efforts on Mrs. Michel's behalf after dissolution. In opposition Mrs. Michel contends all the works were simply "in progress" and had no community property value. Therefore, she seeks a finding that all the literary works partially completed are her separate property. In the alternative, Mrs. Michel argues if the literary works are community property, even in part, she is entitled to a reimbursement "for any additional time and expense she spends in completing, changing or promoting any and all such works."
We find by analogy the rule stated by the court in Due v. Due, 342 So.2d 161 (La.1977):
"... that the attorney's interest in pending contingent fee contracts constitutes a patrimonial asset which, if the contract is acquired during the marriage, forms part of the community insofar as its value is based upon the attorney's services performed during the marriage."at 165, 166.
is applicable to the partition of the literary works of Mrs. Michel. Therefore, a writer's literary works constitute a patrimonial asset which forms a part of the community insofar as its value is based upon the writer's services performed during the existence of the community.
Since a determination of the precise services performed during the existence of the community is a question of fact this court must defer to the trial court's finding unless manifest error has been committed. The trial court found:
"Under LSA-Civil Code Article 2338 community property comprises property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. There is no question but that much of the research and preliminary work on all of Mrs. Michel's writings took place before the termination of the community in September of 1980. However, publishing contracts for her two novels `Cajun' and `Marguerite Tanner' were not entered into by her with the publishers until March 31, 1981, *834 and June 1, 1981, respectively. Mrs. Michel testified that in connection with Cajun, she had merely prepared a preliminary outline for a novel entitled `Happy Land' during the summer of 1980, and that it was not until well after the termination of the community did she prepare the manuscript of Cajun which was a completely rewritten version of Happy Land.
It would be impossible for the court to delinieate (sic) what portion of the work product of the authoress in each of these writings took place before or after the termination of the community. Suffice it to say that some of her work and effort which served as a foundation for the completed works took place during the community and should enure in part to the community's benefit. The court, in an effort to make a reasonable assessment of her work product prior to the termination of the community which may be attributable to these writings, determines that, with the exception of the novel `Cajun', the community should share in fifty per cent of whatever value or revenues which have or may be realized from all of the disputed writings. Therefore, Melvin Michel's ownership of twenty-five per cent of all of these works except for `Cajun' is recognized. It appears that Mrs. Michel's investment in time and research in the novel `Happy Land', the forebearer of Cajun, prior to the dissolution of the community was minimal and the court fixes the community's share in this novel at ten per cent. Accordingly, Melvin Michel's ownership in the value and receipts from this novel is fixed at five per cent."
This court in Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981), while considering the proper allocations of value between work done during the community's existence and then after dissolution held:
"In determining the amount of enhancement, any reasonable method may be used, even, in difficult cases, to the extent of averaging the conflicting and exaggerated estimates of witnesses." at 1101.
Based on these criteria the judgment of the trial court as to this aspect of the partition is amply supported by the record and will not be disturbed.[2]
2. The "Factor 1" commission of Mr. Michel.
The trial court provided the factual background as to this aspect of the partition as follows:
"Mr. Michel received $18,472.00 as a commission on commissions received by agents of Jefferson Standard Life Insurance Company from the period of October 1, 1980 through the date of his termination with Jefferson Standard on May of 1981. This commission was received by virtue of an arrangement described as `Factor 1 category' which was in effect in his contract with Jefferson Standard at the time of the dissolution of his marriage with Mrs. Michel. Under this `Factor 1' arrangement, Mr. Michel received commissions from the efforts of those sales agents he had recruited and trained for the company."
Further, the trial court found:
"Mr. Michel had no vested interest in these commissions of salesman he recruited, but as long as he worked for Jefferson Standard `Factor 1' it was merely a method for computing his compensation as Regional Agency Manager for Jefferson Standard. The court is of the opinion that Mrs. Michel is not entitled to a claim against these earnings."
However, the record establishes Mr. Michel completed the recruiting and training of the sales agents prior to the dissolution of the community. In addition, his contract of employment with Jefferson Standard was effective during the existence of the *835 community and the contracts of the sales agents were entered into during the existence of the community. Therefore, it is the opinion of this court the Factor 1 commission, pursuant to the rationale expounded in Due, are community property. To hold otherwise would be inconsistent with the view of this court Mrs. Michel's partially completed writings are community property. Merely, because Mr. Michel had to continue working as an insurance agent for Jefferson Standard to obtain the Factor 1 commissions does not defeat their community nature. Mrs. Michel never has to publish her writings, but if she does and is compensated for such publication then the percentage attributable to the community must be allocated. We find Mrs. Michel is entitled to one-half of the $18,472 in Factor 1 commissions received by Mr. Michel, or $9,236.
3. The commissions on policy renewals received by Mr. Michel after termination of the community but on policies sold prior to the community termination.
Mrs. Michel in her answer to this appeal raised as error the finding of the trial court that only a 50% community interest existed as to Mr. Michel's renewal commissions on policies sold prior to dissolution of the community but renewed after the dissolution.
In Boyle v. Boyle, 459 So.2d 735 (La.App. 4th Cir.1984), writ denied, 462 So.2d 651 (La.1985), the court affirmed a trial court finding that renewals attributable to the period after the separation are separate property of the agent spouse. However, for the following reasons expressed by the trial court in this instance, we consider the community to be entitled to a 50% interest in the renewal commissions.
The trial court detailed:
"The parties have agreed that the amount at issue is $2,600.00. Of this amount, $1,135.00 was received by Melvin Michel after September 23, 1980 as first year commissions on policies issued by Jefferson Standard and written by Melvin Michel prior to September 23, 1980. The remaining $1,461.00 was received after September 23, 1980 as a result of renewal commissions. Sale of the above policies were prior to dissolution of the community. Elizabeth Michel makes a claim to one-half of the commissions on the policies sold prior to the dissolution of the community.
There is very little question but that as to the first year commissions received in the amount of $1,135.00, Mrs. Michel should share in one-half of the commissions or $567.00 since the sale of the policies were effected prior to the dissolution of the community and the commissions were merely collected following the termination of the community. In this situation, there remained nothing more to be done. The certainty of collection of the commissions was assured. Such was not the case in connection with the renewals which were obtained following the termination of the community. While it is true that the spade work had been done when the original sale had been made, some service work had to be performed and in addition there was no certainty that the policies would be renewed. The collection of these renewals was of a speculative nature. The court believes that a fair apportionment in this latter case is that the community's interest in the renewal commissions is recognized at 50% and consequently, Mrs. Michel's interest is calculated at $365.00."
We find this view to be consistent with the rationales employed to partition Mrs. Michel's literary works and the Factor 1 commissions of Mr. Michel. Therefore, we find this assignment of error to be without merit.

III.

MR. MICHEL'S RETIREMENT PLAN
The facts concerning the retirement plan are set forth by the trial court as follows:
"The parties have agreed that Melvin Michel has a retirement benefit plan with Jefferson Standard Life Insurance Company. *836 There is a present cash value of $2,334.00 based upon Melvin Michel's contributions. This is his only vested interest. Other than the aforesaid vested interest, Michel has no right to any payment unless and until he reaches age 65, at which time he will be paid $1,318.99 per month until his death."
1. The noncontributory portion.
The court in Sims v. Sims, 358 So.2d 919 (La.1978), recites the following rule which has been applied by the trial court:
"Accordingly, except in an isolated decision to be noted below, our courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse's interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse's interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse's contributions or employment during the existence of the community.
* * * * * *
Nevertheless, under the decisions cited, the wife is entitled to a declaration at this time of the interest attributable to the community of any such payments, if and when they become due in the future. The interest attributable to (acquired by) the community in such payments, when they become due, is the proportionate part of them which results from a spouse's employment or contributions during the existence of the community. When the community is dissolved, the non-employed spouse is entitled to have recognized his or her one-half interest in this community asset, i.e., the right to receive payments from employee benefit plans, to the extent (porportion) that these payments result from the employment or contributions during the community. T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976) and decisions therein cited."at 922, 923.
The plaintiff suggests this court should distinguish Sims because in the present case Mr. Michel has separated from the service of Jefferson Standard whereas in Sims the husband/employee had not yet separated from the service, died, retired, or become disabled. The plaintiff argues the amount Mr. Michel will receive as retirement benefits has become fixed because of his separation from service and consequently by the use of expert testimony an actual value can be assigned to Mr. Michel's contingent right.
We decline this opportunity to so distinguish the court in Sims. Any language in the Sims decision which implied upon separation from service the employee/husband would have had a fixed redeemable value was modified by Sims at 923, fn. 4, which stated in pertinent part:
"If the husband employee had separated from the federal service on the date of dissolution of the community, it would have had such value if the employee had elected to receive the return of his contributions, 5 U.S.C. § 8342(a), instead of opting for receiving deferred retirement benefits commencing at age 62, 5 U.S.C. § 8333, 8338. He did not do so, however, so this valuation is inapplicable."
Therefore, had the employee/husband elected to receive the return of his contributions upon separation a fixed redeemable value would have been present. In this case Mr. Michel had no right to receive the return of his contributions upon separation and accordingly could not have elected such a nonexistent right. Thus, we affirm the judgment of the trial court declaring:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ELIZABETH DUBUS MICHEL shall have a fifty percent (50%) interest in the non vested retirement plan of MELVIN MICHEL with Jefferson Standard Life Insurance Company to be paid only if and when such retirement is paid."
2. The contributory portion.
The plaintiff asserts it was error for the trial court to grant only a one-third *837 interest in the vested contribution by Mr. Michel to the retirement plan because she is entitled to a one-half interest. However, the plaintiff does not provide a basis for this assertion in brief.
Upon review, we find not only that the plaintiff is not entitled to a one-half interest but that the plaintiff is only entitled to a one-sixth interest. Mr. Michel testified without contradiction:
"Q. Do you as an employee or did you as an employee yourself make any contribution at all to that plan?
A. In the early years of the plan, three years as I recall, two of which was before we were married and one after we were married, the plan was a employer-employee contribution plan. In 1957 it was made a noncontributory plan in which the company put up all the plans (sic). There is a total amount of Two Thousand Five Hundred Dollars worth of money that I put into the plan that at all times is a hundred percent vested. An employee's contribution is always one hundred percent vested whether he is fired, quits, or what. That's his money, they can't keep that."
In fact, the trial court found "2/3rds of the cash contributions to the plan were made by Mr. Michel prior to his marriage...." Therefore, the proper apportionment of the vested contribution is two-thirds as Mr. Michel's separate property, one-third as community property. Since Mrs. Michel is entitled to one-half the community interest, she is entitled only to one-sixth of the total. The judgment of the trial court as to this aspect is modified to state:
"ELIZABETH DUBUS MICHEL is granted a [one-sixth (1/6)] interest in the vested retirement plan of MELVIN MICHEL with Jefferson Standard Life Insurance Company to be paid only if and when such retirement is paid."

IV.

THE ORIENTAL RUG
The trial court recommended the Jewel Kirman oriental rug which was community property be sold at private sale. The proceeds of the sale were to be used to pay a $542.50 bill owed to Hawthorne, Wymouth & Carroll and the remaining proceeds, if any, to be distributed equally to the parties.
The plaintiff suggests this court should assign the rug and the debt to the defendant and credit any amount the plaintiff owes to defendant accordingly. As a basis, the plaintiff sets forth La.R.S. 9:2801(4)(c) which provides:
"(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security."
The trial court apparently applied La.R.S. 9:2801(4)(d), which states:
"(d) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and *838 the period of time during which the asset shall be offered for private sale."
Plaintiff argues La.R.S. 9:2801(4)(d) is inapplicable because the allocation to defendant of the rug in this instance is not "inequitable to a party."
We choose to follow this reasoning because the increase in the plaintiff's liability to defendant as a result of this court ordering plaintiff to reimburse the defendant for payments on the family home mortgage note was a factor which the trial court could not have considered. Further, the record does not establish Mr. Michel will be placed in an inequitable position by retaining as sole owner this rug which he has been possessing for years as co-owner.
The defendant in his affidavit stating community assets and liabilities listed the following information:
"3. One 12 × 15 Jewel Kirman oriental rug presently located at affiant's residence at 1221 Kimbro Drive, Baton Rouge, Louisiana, 70808 $5,000"
This $5,000 value was also supplied by the plaintiff. Therefore, we allocate the rug to the defendant along with the $542.50 bill to Hawthorne, Wymouth & Carroll and credit the plaintiff $2,229.75 (one-half of the $5,000 value of the rug minus $271.25, one-half the $542.50 bill allocated to defendant).

V.

DECREE
This court orders the plaintiff, Elizabeth Dubus Michel, to pay an equalizing sum of money in the amount of $14,455.16 to Melvin M. Michel.[3] In addition, we find Elizabeth Dubus Michel is entitled to a one-sixth interest in the vested portion of Melvin M. Michel's retirement benefit plan as discussed above. In all other respects the judgment of the trial court is affirmed. All costs are assessed equally between the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] La.Civ.Code art. 155 provides:

"The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the original petition was filed in the action in which the judgment is rendered, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorney fees and costs incurred by the spouses in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. Upon reconciliation of the spouses, the community may be re-established by matrimonial agreement, as of the date of filing of the original petition in the action in which the judgment was rendered." (Emphasis ours.)
[2] The trial court found: "Melvin Michel is entitled to $337.50 (25%) of the $1,350.00 advance received in the work known as `Marguerite Tanner' and $450.00 (5%) of the $9,000.00 advance received in the work `Cajun'." In addition the trial court noted: "It is stipulated that Beth Michel received and utilized the $116.83 from Abbey Press."
[3] This sum is calculated as follows:

By agreement owed to Mr. Michel by Mrs.
Michel.........................................$7,483.00
Reimbursement owed to Mr. Michel by
Mrs. Michel for payment of family home
mortgage note.................................$14,912.50
Reimbursement owed to Mr. Michel by
Mrs. Michel for interest paid..................$3,290.00
Reimbursement owed to Mr. Michel by
Mrs. Michel for installation of a new
walkway for the family home .....................$633.00
Interest of Mr. Michel in advances to Mrs.
Michel on account of her literary works .........$845.91
Interest of Mrs. Michel in Factor 1 commissions
paid to Mr. Michel.............................$9,236.00
Interest of Mrs. Michel in policy renewal
commissions paid to Mr. Michel...................$932.50
Credit to Mrs. Michel for oriental rug
allocated to Mr. Michel less one-half the
bill owed to Hawthorne, Wymouth and
Carroll allocated to Mr. Michel................$2,229.75
Interest of Mrs. Michel in a community
insurance policy on the life of Mr. Michel ......$311.00