509 So.2d 189 (1987)
Sandra Smith KEES
v.
Thomas Hickman KEES.
No. CA 86 0775.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
June E. Denlinger, Baton Rouge, for plaintiff-appellant Sandra Smith Kees.
James Clary, Jr., Baton Rouge, for defendant-appellee Thomas H. Kees.
Before GROVER L. COVINGTON, C.J., and LAINER and ALFORD, JJ.
*190 GROVER L. COVINGTON, Chief Judge.
Plaintiff appeals the judgment of the trial court which denied her motion to traverse the detailed descriptive list filed by the defendant in this proceeding to partition the community property of the parties. The parties were divorced on June 9, 1975; however, these proceedings were not instituted until May 17, 1985. The only two items of alleged community property on plaintiff's detailed descriptive list were the defendant's retirement fund with Ethyl Corporation, his former employer, and the severance pay which defendant received from Ethyl when he was "laid off" on May 31, 1985. The defendant also sought to traverse plaintiff's detailed descriptive list, denying that the items listed by plaintiff were community property. The trial judge ruled that defendant's severance pay was his separate property, and this appeal followed. For the reasons hereinafter discussed, we affirm the judgment of the trial court.
Our consideration of the nature of the severance pay involved here begins with the provision in the labor union contract governing severance pay from Ethyl Corporation, which was stipulated into evidence by both parties. It reads, in pertinent part, as follows:
Severance Pay Allowance
The following are provisions applicable to a severance allowance for an employee permanently terminated by the COMPANY on account of excess manpower, beyond that required for anticipated production requirements. A permanent termination must be by reason of a technological change, permanent manpower assignment or reassignment, permanent consolidation or rearrangement of job duties and content, or production changes of any kind. A severance allowance will not be granted for layoffs due to strike, lockout, fire, or other casualties, national emergency, act of God or of the public enemy, any other cause beyond reasonable control of the COMPANY, employee's failure to meet physical or other qualifications, voluntary resignation, retirement, or any similar causes, the foregoing enumeration being illustrations and not limitations.
A. Eligibility
An employee will be selected for permanent termination in accordance with the layoff procedure as set forth in the then current Collective Bargaining Agreement between the COMPANY and the UNION. Each employee so selected who has completed at least one (1) year of service with the COMPANY will be eligible for a severance allowance.
B. Severance Pay Allowance
An employee who is eligible to receive a severance allowance will receive a severance allowance in an amount equal to one (1) week's pay for each completed year of COMPANY service; and for fractional years of COMPANY service beyond one (1) completed year of COMPANY service, one-twelfth (1/12) of one (1) week's pay for each completed month of COMPANY service; provided that the maximum severance allowance will not exceed an amount equal to twenty-five (25) weeks' pay. COMPANY service will be calculated in accordance with the COMPANY'S service rules. An employee's week's pay will be computed at the highest permanent base rate of pay for his regularly scheduled work during the six-month (6-month) period immediately preceding his date of termination, plus merit pay if applicable. This severance allowance will be paid in a lump sum at time of termination. The check covering the severance allowance will be reduced by deduction required or permitted by law.
Thus, the conditions precedent to receiving severance pay are: (1) permanent termination; (2) initiated by the company, not the employee; (3) based on an excess of manpower, rather than other causes for termination; (4) not coincident with a voluntary resignation or retirement. The lump sum payment is referred to as an "allowance," rather than "benefits." Finally, the pay is subject to standard payroll deductions, such as F.I.C.A.
Appellant argues that this severance pay must be analogized to retirement benefits, in that it represents property attributable *191 to employment during the existence of the community, "the produce of the reciprocal industry and labor" of the earning spouse. She claims that the fundamental reason for severance pay is it was a contractual right which Ethyl bound itself to pay that vested after one year of employment by the appellant. The thrust of her argument seems to be that since appellee did not expend any labor, skill, or industry after his termination, the severance pay cannot be separate funds in the sense that salary earned at that time would be.
Appellee contends that it is improper to make such an analogy, as there are crucial differences between severance pay and retirement benefits. He argues that the rationale under which retirement or pension benefits are considered community in our jurisprudence is that certain contributions are made or accrue to some certain plan or fund periodically. If these periodic contributions or accruals occur during the existence of the community, they must be considered to be in the nature of additional remuneration to the employee. Thus, they are community assets to the extent attributable to employment during the existence of the community. Severance pay, on the other hand, involves no periodic payments or accruals. It is a lump sum benefit paid to an employee, if he is forced to leave his employment, in lieu of further wages. Thus, appellee argues, one must look to the nature of the wages the employee would have received at the time of severance had he not been severed from employment. If the wages would have been separate property, then the severance pay must be considered separate. We agree.
Article 2338 of our Civil Code, which was in effect at the time appellee received the severance pay in question, provides in pertinent part that "[t]he community property comprises: property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse...." [Emphasis added.] There is no question that the severance pay was received after the legal regime between the parties had been terminated, as more than ten years had elapsed between the two events. Our focus is on whether the right to the severance pay was acquired during the existence of the community. We think not.
The cases cited by appellant, Sims v. Sims, 358 So.2d 919 (La.1978) and others, are not persuasive. Those cases all dealt with retirement funds and pension plans which involved periodic, fixed contributions or credits into certain accounts destined to be received by employees upon the happening of a certain event. Such is not the situation with severance pay, which is not accumulated in a certain fund or account, is not based on periodic credits or accruals, and does not vest with the employee. The one-year employment requirement in this instance does not vest the employee with the certain contractual right of severance pay at the end of his employment; it merely establishes him as eligible to receive severance pay if all the other requirements for entitlement to severance pay are met. Thus, it is not connected with a certain future event, but merely a possibilityinvoluntary termination by the company because of excess manpower. It is significant that under the terms of the contract, an employee might never receive severance pay.[1] Therefore, severance pay cannot be considered to be acquired until such time as the employee may be involuntarily terminated, if ever.
We find the method of calculating severance pay by Ethylmeasuring the years of service of the employeeto be irrelevant to determining the nature of the payment, as this method is an arbitrary one. Ethyl could just as easily have decided payment was to be based on the job classification of the employee, or some other factor. Thus, any undue emphasis on the formula used is inappropriate.
Finally, we note that the contract itself distinguishes severance pay from retirement *192 benefits by specifying that the employee is not eligible for the severance allowance at retirement. Such a provision lends credence to the contention by appellee that the severance payment is in lieu of future wages and is not to be considered additional remuneration for past services.
For these reasons, we hold that the severance pay received by appellee more than ten years after the termination of the community of acquets and gains between him and appellant is his separate property, and the trial court was correct in so treating it on the parties' motion to traverse each other's detailed descriptive lists. All costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[1] Appellant's reliance on Due v. Due, 342 So.2d 161 (La.1977), is misplaced. That case was based on an attorney's contingency fee that in part was compensation for work performed during the existence of the community. Such is not the case here, where there is not compensation or remuneration for work already performed involved.