590 So.2d 649 (1991)
Ronnie WILLIAMS, Plaintiff-Appellant,
v.
Bonnie S. WILLIAMS, Defendant-Appellee.
No. 90-497.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*650 Gravel, Brady & Berrigan, Charles G. Gravel, Alexandria, for plaintiff-appellant.
Brent S. Gore, Ferriday, for defendant-appellee.
Before GUIDRY, DOUCET and KNOLL, JJ.
GUIDRY, Judge.
Plaintiff-appellant, Ronnie Williams, appeals from a community property partition judgment.
Ronnie Williams and the defendant-appellee, Bonnie Williams, were married on June 15, 1964. The parties were legally separated by a judgment dated November 2, 1984. The community of acquets and gains existing between the parties was dissolved effective July 13, 1984. The parties were divorced by judgment dated September 18, 1985. On December 1, 1986, Bonnie Williams instituted this proceeding seeking a partition of community property. The trial court rendered and signed the partition judgment at issue on September 5, 1989, having given both original and supplemental written reasons in support thereof. Ronnie Williams appealed.
On appeal, appellant asserts error in the trial court's judgment in the following respects. First, he contends that the trial court erred in determining that the premium commissions received by him as a State Farm agent from policies renewed after dissolution of the community are a community asset. In accord with this finding, the trial court ordered appellant to pay appellee $103,546.85, calculated to be her share of the net income derived from policy renewal commission income for a five year period beginning July 13, 1984. Secondly, appellant asserts trial court error in the disallowance of his reimbursement claim for payments made after July 13, 1984 from his separate property on the home mortgage principal, interest, taxes and insurance. Thirdly, appellant seeks reversal of the trial court's judgment insofar as it determined that "termination payments", under his agreement with State Farm Insurance Company, are community property.
For the reasons which follow, we find merit in all of appellant's specifications of error and amend the trial court's judgment accordingly.

INSURANCE PREMIUM RENEWALS
Ronnie is a State Farm Insurance Company agent in Ferriday, Louisiana. He has been an agent pursuant to a "State Farm Agent's Agreement" since June 1, 1968, having for two years prior to this date been classified as a trainee. Under this agreement, the agent is limited to soliciting and writing policies solely and exclusively for State Farm. The contract styles Ronnie's status as an independent contractor. He is required to remit all premiums he collects to State Farm and he receives commission checks from the company *651 based on total collected premiums. The agent's percentage of commission varies depending on the type of policy written (automobile, fire, life or general). In all instances, if the policy is renewed at the end of its initial term, the agent receives a renewal commission, i.e., a percentage of the premium paid at renewal. Thus, Ronnie receives income from new policies issued and from existing policy renewals.
The trial court, in its reasons for judgment, found that "a very substantial portion" of the income received by Ronnie after July 13, 1984 resulted from renewals of policies issued prior to July 13, 1984, i.e., during the existence of the community property regime. The trial court reasoned that, since the renewals resulted from work performed while the community was in existence, Bonnie should share in the renewal commissions received after July 13, 1984. In his supplemental reasons for judgment, the trial judge devised a formula to calculate the share of these commissions attributable to Bonnie. The court concluded that, for each year following July 13, 1984, the renewal rate on policies existing before this date would decrease 20%. Accordingly, he awarded Bonnie one-half of the yearly percentage of premiums to be collected on a five year decreasing scale, e.g., one-half of 100% for year one; one-half of 80% for year two, etc. This calculation was made in reliance on the cases of Due v. Due, 342 So.2d 161 (La.1977); Boyle v. Boyle, 459 So.2d 735 (La.App. 4th Cir. 1984), writ denied, 462 So.2d 651 (La.1985); and, Michel v. Michel, 484 So.2d 829 (La. App. 1st Cir.1986). We find the principles enunciated in the cited cases inapplicable, under the circumstances of this case, and the trial court's reliance thereon error.
In Due, supra, our Supreme Court considered the classification of an attorney's contingent fee contract as separate or community property stating:
"... an attorney's interest in pending contingent fee contracts constitutes a patrimonial asset which, if the contract is acquired during the marriage, forms part of the community insofar as its value is based upon the attorney's services performed during the marriage." Due, supra, at 165, 166, citing former La.C.C. art. 2402.
The court reasoned that such a contract, although aleatory and revocable at the will of the client or by death, creates a vested interest in the attorney to recover for the services performed prior to termination of the contract. Due, supra, at 164, 165. This principle of proration of services performed during and after the marriage was applied by the Fourth Circuit in Boyle to an insurance agency begun by a husband and wife during their marriage. The trial court awarded the wife "one-half of the renewals on policies written as of November 13, 1978 [the date the community terminated], although the funds would not be collected until a future time". Boyle, supra, at 736. The trial court found that renewals on policies issued during the marriage and renewed on or prior to November 13, 1978 were community property. On appeal, the wife-appellant urged that she was entitled to a greater award in the form of a continuing one-half interest in the insurance agency. She claimed that the agency was either a joint venture or a partnership consisting of herself and Boyle. The Fourth Circuit denied this contention and, in doing so, affirmed the holding of the trial court as to the classification of renewal premium commissions earned on policies renewed after November 13, 1978 as separate property of the husband.
In Michel, the First Circuit was also faced with an identical question of classification of policy renewal commissions. At issue was $1,461.00 of commissions clearly identified by the court as resulting from renewals received after termination of the community on policies sold prior to the termination date. In adopting the trial court's reasoning, the court found that:
"While it is true that the spade work had been done when the original sale had been made, some service work had to be performed and in addition there was no certainty that the policies would be renewed. The collection of these renewals was of a speculative nature." Michel, supra, at 835. (Emphasis added).
*652 The court then found that the "community's interest" in the renewal premiums was 50%, or approximately $730.00. Accordingly, Mrs. Michel's share was determined to be one-half of $730.00 or $365.00. This calculation was held to be fair in light of the court's classification of the wife's uncompleted literary works at an earlier stage in the opinion as community property. Thus, in Michel, it appears that an equitable result was fashioned on the issue of the husband's renewal premium commissions in order to be consistent with the court's prior treatment with respect to the wife's unfinished literary works.
Any analysis of the classification of property must start with the rebuttable presumption that property acquired during marriage is community property. La.C.C. art. 2340. At issue in the case sub judice is whether the renewal premium commissions are "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse". (La.C.C. art. 2338) "[A]s between the spouses, the jurisprudence is uniform in recognizing that the community is terminated retroactively to the date of the filing of the petition; and any property acquired or debt incurred after that date is separate...". K. Spaht and L. Hargrave, Matrimonial Regimes § 7.2, at 232, in 16 Louisiana Civil Law Treatise (1989).
The record in this case clearly reflects that Ronnie has no ownership interest in the policies he writes for State Farm. During the course of discovery, the depositions of two State Farm corporate officers, David Westfall and James Ronald Brooks, were taken by the parties. The above fact was established therein, as was the fact that Ronnie has no vested interest in or ownership right to the renewal premium commissions. The receipt of the commissions is conditional and dependent on the policies being renewed. If State Farm or the insured party elected not to renew a particular policy, Ronnie would derive no commission and would also have no right to force the parties to execute a renewal. In addition, under the "agency agreement", if the agreement is terminated, Ronnie is not entitled to any renewal premium commissions. The same rule applies if he should die. In all of these respects, this case is clearly distinguishable from Due, supra.
Admittedly, property acquired as a result of services performed prior to the date of termination of the community is classified as community property. La.C.C. art. 2338, supra. However, the services performed by Ronnie during the existence of the community created no vested right in him, i.e., property interest acquired during the community, in the renewal premiums because of their conditional nature.
The State Farm officers also testified that it was impossible to translate the gross number of policies renewed into an exact money figure received as renewal premiums because of the varying nature of some premiums. Also, Westfall and Brooks stated that it could not be determined with reasonable certainty that the rate of renewals and the amounts received therefrom would remain constant after the initial six-month period subsequent to the community termination date. Adding to the speculation and uncertainty is the fact that some policy renewal premiums are subject to fluctuation on an individual basis. For example, a single automobile policy rate may go up or down depending on the number of drivers listed therein or the number of automobiles covered. These factors may change every six months. Clearly, it is impossible to determine with any degree of certainty the amount of Ronnie's income after termination of the community resulting from renewal commissions on policies written prior to the termination date. Unlike Michel, supra, we are not dealing with a single sum of clearly determined income attributable to renewal commissions. Instead, the amount is uncertain and, based on the record before us, we find that any attempt to determine an amount to be highly speculative in rationale, method and result.
Additionally, it is obviously impossible to determine the proportion of the renewal premiums attributable to services performed during the community's existence vis-a-vis the agent's efforts and the services performed by him after the community's *653 termination. It is reasonable to conclude, as did the First Circuit in Michel, supra, that some service work had to be performed after the community terminated. Clearly, such services contributed in great measure to the renewal of the policies. This, in turn, tends to make the amount of service on the policies during the marriage less important vis-a-vis renewals. It would be highly speculative for this court to proportion the services when the State Farm officers stated that such an effort would be virtually impossible.
It is well settled in Louisiana jurisprudence that the appellate court should not disturb a trial court's finding of fact unless it is clearly wrong. However, the appellate court must go beyond a survey of the facts to determine if there is a reasonable basis for the finding. In addition, there must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
Considering the undisputed facts above set forth in light of the settled principles applicable to the classification of property as separate or community, we determine that the trial court clearly erred when it concluded that the renewal premium commissions earned by Ronnie Williams on policies renewed after July 13, 1984 were community property. Accordingly, we will amend the judgment of the trial court to reverse and disallow the award of $103,546.85 to Bonnie Williams.

REIMBURSEMENT OF HOUSE PAYMENTS
The record reflects that Ronnie made all payments on the mortgage principal, interest, property taxes and property insurance following termination of the community. He asserted a claim for reimbursement of one-half of the value of his separate property expended to satisfy these community obligations, citing La.C.C. art. 2365. The trial judge disallowed Ronnie any reimbursement concluding that, when he, the trial judge, ordered Ronnie to make these payments in the separation judgment, he intended such payments to be in the nature of child support. Characterized as such, the trial court found that the payments were not subject to a claim for reimbursement.
Ronnie asserts that the trial judge erred by classifying his payments to maintain the home as child support and by disallowing his reimbursement claim for the payments he made subsequent to July 13, 1984. For the reasons which follow, we agree.
The issue presented is two-fold. First, we must decide whether the trial court impermissibly amended the substance of an already final judgment. La.C.C.P. art. 1951 provides as follows:
"A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation." (Emphasis added).
The judgment of separation condemned Ronnie to pay $1,200.00 per month child support. It also reduced his payments to $900.00 upon the date on which his eldest son attained 18 years of age. In a completely separate paragraph, Ronnie was ordered to pay the house note. The separation judgment makes absolutely no mention that the house payments are to be treated as child support, which was awarded in a previous paragraph.
In Hebert v. Hebert, 351 So.2d 1199 (La. 1977), the trial court ordered the husband to pay child support in the amount of $65.00 per week. The judgment was later amended to provide that he pay $50.00 per week in cash as support and $15.00 per week as mortgage payments on the home. The husband was to receive a credit for the $15.00 mortgage payment as a payment of his separate property on a community obligation. The Supreme Court reversed the amended judgment and reinstated the original judgment. In doing so, it applied the clear wording of La.C.C.P. art. 1951 in finding that the substance of the original final judgment had been changed. Judgments "... may be amended by the court where the amendment takes nothing from or adds *654 nothing to the original judgment". Villaume v. Villaume, 363 So.2d 448 (La. 1978).
Our brethren of the Fifth Circuit applied these principles in Schexnayder v. Schexnayder, 503 So.2d 104 (La.App. 5th Cir. 1987). In that case, the original separation judgment awarded the wife child support in the amount of $600.00 per month. The trial court later amended the judgment to make the husband responsible for medical and hospital payments in excess of insurance policy coverage. This amended judgment also characterized these additional payments as child support. The appellate court declared the second judgment a nullity because it effected a substantive change in the original judgment. Schexnayder, supra, at 106.
Applying the foregoing statutory provision and case law, it is clear that the judgment appealed from changed the substance of the original final judgment of separation. By retroactively classifying the house payments as child support, the trial court impermissibly "added to" the original final judgment.
For these reasons, we reverse the trial court's judgment insofar as it classified payments by Ronnie Williams on the mortgage note, property taxes, and property insurance as child support.
We next consider whether Ronnie can assert a claim for reimbursement of the payments attributable to maintenance of the house. Ronnie claims that the payments were made from his separate property and were used to satisfy a community obligation. As such, he should be allowed to assert a reimbursement claim pursuant to La.C.C. art. 2365. We agree.
On July 13, 1984, the date when the community terminated, La.C.C. art. 2365 read as follows:
"If separate property of a spouse has been used to satisfy a community obligation, the spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
Reimbursement may only be made to the extent of community assets, unless the community obligation was incurred for the ordinary and customary expenses of the marriage, or for the support, maintenance, and education of children of either spouse in keeping with the economic condition of the community. In the last case, the spouse is entitled to reimbursement from the other spouse even if there are no community assets."
This article was subsequently amended in 1990 to clarify the language of the article which the legislature felt had been wrongfully construed in several cases. See Gachez v. Gachez, 451 So.2d 608 (La.App. 5th Cir.1984), writ denied, 456 So.2d 166 (La. 1984).
In Dupre v. Dupre, 522 So.2d 694 (La. App. 5th Cir.1988), writ denied, 523 So.2d 1341 (La.1988), both the separation judgment and the divorce judgment ordered the husband to pay $200.00 in child support and to also pay the mortgage note. The trial court's judgment partitioning the community property granted the husband reimbursement for one-half of his separate property used to pay the mortgage note. The wife appealed seeking to have the mortgage note obligation declared child support and thus not subject to reimbursement. The Fifth Circuit rejected the wife's demand holding that payment of the mortgage note and the payment of child support are separate obligations of the husband. Of particular importance to the court was the fact that each obligation was contained in a separate paragraph in both the separation and divorce judgments. Also, it reasoned that each obligation has a separate purpose, i.e., one is to maintain property and the other is to support the other spouse and children on the basis of their needs. The court found that the payments were made from the husband's separate property and allowed his claim for reimbursement. In a similar case this court denied the wife's claim that her former husband's mortgage payments were alimony and ruled that such payments were subject to reimbursement, see Patin v. Patin, 462 So.2d 1356 (La.App. 3rd Cir.1985), writ denied, 466 So.2d 470 (La.1985).
*655 We conclude that pursuant to La.C.C. art. 2365, Ronnie is entitled to reimbursement for one-half of the amount of his separate property used to satisfy the community obligation, i.e., mortgage principal, interest, property taxes and insurance, since the date of termination of the community, July 13, 1984. This claim is to be satisfied from Bonnie's share of the net value of the community. See Sellers v. Landry, 489 So.2d 440 (La.App. 3rd Cir. 1986); Davezac v. Davezac, 483 So.2d 1197 (La.App. 4th Cir.1986); and, K. Spaht and L. Hargrave, Matrimonial Regimes § 7.14, at 285-287, in 16 Louisiana Civil Law Treatise (1989). We will amend the judgment accordingly.

TERMINATION PAYMENTS
According to the "agency agreement" between Ronnie and State Farm, the agreement is terminable at the will of either State Farm or the agent or by the mutual agreement of both parties. Upon termination, Ronnie is entitled to receive specific payments from each division of the company if he meets certain conditions. There are two separate termination payment plans, "Termination Payments" and "Full Extended Termination Payments". To be eligible for "Termination Payments", Ronnie must have worked for State Farm for at least two years and he must return all materials owned by State Farm to the company within 10 days of termination. In addition, he is barred from soliciting any existing policyholders on behalf of other insurance companies for one year after termination. To qualify for "Full Extended Termination Payments", Ronnie must be at least 60 years of age, have at least 20 years experience as a State Farm agent, with his final 10 years prior to termination in continuous service to the company in addition to meeting the "Termination Payments" conditions.
The trial court held that both of these termination payment plans were community assets as a result of services performed by Ronnie during the community's existence. It awarded Bonnie a one-half share in the termination payments which her husband may ultimately receive. In doing so, the court analogized the termination payments to retirement benefits and applied the pro-rata distribution scheme enunciated in Sims v. Sims, 358 So.2d 919 (La.1978), and its progeny, e.g., Lewis v. Lewis, 467 So.2d 179 (La.App. 3rd Cir.1985), and Thrash v. Thrash, 387 So.2d 21 (La.App. 3rd Cir.1980).
On appeal, Ronnie contends that both termination payment plans are not retirement plans but, in fact, are more analogous to severance pay. He argues that, as such, the termination payments are not community property and should not be subject to the Sims pro-rata distribution formula. We agree. We hold that both State Farm termination payment plans are not community property, and Bonnie is not entitled to share pro-rata in any termination payments which Ronnie may ultimately receive.
Sims, supra, concerned the classification of an air traffic controller's federal retirement benefits plan. The husband had contributed community funds to the retirement plan. The Supreme Court, in reliance on T.L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1976), held that the husband's right to receive his retirement benefits "... is, to the extent attributable to his employment during the community,... an asset of the community". Sims, supra, at 922. The court devised a formula whereby the other spouse is entitled to one-half of the part attributable to the community divided by the part attributable to total creditable service. Sims, supra, at 924. The Sims formula was subsequently applied in Thrash, supra [to the Louisiana State Teachers Retirement System Plan]; Lewis, supra [to a parish police jury employee's Parochial Employees Retirement System of Louisiana plan]; and, Roy v. Landry, 489 So.2d 1018 (La.App. 1st Cir. 1986) [to a Kaiser Aluminum Retirement Plan which had vested in the employee husband at 10 years of service].
Appellant urges that the foregoing well settled jurisprudence was erroneously applied by the trial court since the termination payment plans under the "Agency Agreement" are not retirement plans, and *656 he had no vested right to the payments when the community terminated. In support of this assertion, he argues that the case of Kees v. Kees, 509 So.2d 189 (La. App. 1st Cir.1987), is applicable as persuasive authority for the proposition that the termination payment plans should be classified as severance pay. As such, the right to the payments would not be community property. Kees, supra, involved an Ethyl Corporation employee's right to severance pay upon termination by Ethyl. Upon termination, the employee was to be given one week of pay for each year of completed service with the corporation. The First Circuit held that this right to receive severance pay was not community property since it was not acquired during the community. It noted that the right is conditional upon the company's decision to permanently terminate the employee based solely on excess manpower. It could not be tied to a voluntary resignation or retirement. Kees, supra, at 190. In addition, neither the employee nor Ethyl made any periodic payments or contributions to a separate fund or account. Based on these distinguishing factors, the court declined to apply the Sims formula.
For the following reasons which clearly distinguish both termination payment plans from retirement plans, we find that the Sims rationale was erroneously applied in this case. Neither State Farm nor Ronnie make any periodic contributions to a separate fund or account. Both State Farm officers who testified characterized the termination payments as a company buy back or reimbursement of the agent's book of business extant at the time the agency agreement terminates. Most importantly, the agent has no vested right to receive termination payments until the date of termination of the "agency agreement" with State Farm. He must also meet the conditions previously mentioned in order to receive the payments. Clearly, Ronnie's right did not exist at the date of termination of the community and, as long as he is still a State Farm agent, such status continues. This right is obviously based on a conditional, uncertain future event and if and when exercised will be based solely on the agent's book of business at the time the right vests, which in this case will consist entirely of Ronnie's separate property.
The company pays the ordinary "Termination Payments" for 60 months after the termination date. These payments are made at a set monthly amount. However, the amount is subject to drastic reduction if, one year after termination, there remains less than 75% of the agents "personally produced" policies on the books of State Farm as were on the books at the date of termination. The officers stated that this conditional reduction is based upon State Farm's interest in "protecting against erosion of business". They admitted that, on the basis of this condition, the termination payments could conceivably be reduced to zero after one year. In addition, an agent can qualify for the ordinary "Termination Payments" if he wishes to reduce the automobile policies he services by 500 or 25% of the total number of automobile policies and does so by assigning the automobile policies to another State Farm agent. Thus, Ronnie could qualify for termination payments without actually severing his contractual relationship with State Farm. Although not controlling, it is also important to note that State Farm does not style either termination payment plan as a pension or retirement plan. Based on all of these factors, it is clear that Ronnie's right to receive either termination payment plan will be earned long following termination of the community, if ever (depending on whether he meets the many conditions imposed by State Farm). As such, his inchoate right to receive such termination payments is his separate property.
For these reasons, we reverse and set aside those portions of the judgment of the trial court dated September 5, 1989 as follows:
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Bonnie Williams is pro rata owner of State Farm `Extended Termination Payments Benefit' plan as per Sims v. Sims, 358 So.2d 219 [919] and Thrash v. Thrash, 387 So.2d 21.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Bonnie *657 Williams is pro rata owner of State Farm `Termination Benefits' as per Sims v. Sims, Supra, and Thrash v. Thrash, Supra formulas.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Ronnie Williams owes Bonnie Williams $103,546.85 for 1984 through 1988 net income from State Farm Insurance Agency, less income taxes for those years and based on her pro rata share of automatic renewals of existing policies."
Additionally, for the above reasons, we amend the trial court's judgment to grant judgment in favor of Ronnie Williams and against Bonnie Williams for one-half (½) of the total amount paid by Ronnie Williams in payment of the mortgage principal, interest, insurance and taxes on the family home subsequent to July 13, 1984. This amount is to be satisfied from Bonnie Williams' share of the net value of the community. We remand this matter to the trial court for the limited purpose of ascertaining the exact amount to which Ronnie Williams is entitled to be reimbursed.
In all other respects, the judgment appealed from is affirmed. Bonnie Williams, appellee, is cast with all costs of this appeal.
REVERSED IN PART; AFFIRMED IN PART; AND, REMANDED.