1 iLOBRANO, Judge.
The community of acquets and gains which formerly existed between Allison Jones Stewart and Dr. Dudley Marcus Stewart, Jr. was terminated on August 6, 1986. By judgment dated June 30,1989, the assets and liabilities of the former community were partitioned. Included in the list of community assets was the pension plan of Dudley Stewart, Jr. which contained $162,736.00 as of August 1986.[1] Community interest accruing to that account from August 1986 to the date of the partition judgment totaled $2,316.00.
The pension plan was not allocated to the parties in specific monetary amounts in’ the partition judgment. Rather, the judgment stated that the pension plan and its accrued interest, totaling $165,052.00, were to be divided “according to Simms (sic) formula,” referring to the allocation method set forth in Sims v. Sims, 358 So.2d 919 (La.1978).
On February 25, 1993, Dr. Stewart filed a contradictory motion to compel his former wife to execute a Qualified Domestic Relations Order (QDRO) prepared by his attorney which included a partition of the pension plan according to the Sims formula.[2]
A trial was held on December 13, 1993 to resolve the issue of which date is to be used in applying the Sims formula. Counsel for Mrs. Stewart argued that the Sims formula should be applied as of August 1986, the community termination date. Counsel for Dr. Stewart argued that the applicable date should be the date on which the pension plan ^benefits become payable. This latter interpretation would result in less benefits due to Mrs. Stewart because of changes implemented by the Tax Reform Act of 1986 which became effective as to this pension plan in October 1987.
Following trial, the court issued a QDRO recognizing Mrs. Stewart’s interest in Dr. Stewart’s pension plan and adopting the view that benefits due to Mrs. Stewart should be calculated using the value of the plan as of the date of the termination of the community. The trial judge included the following paragraph in the order and the inclusion of this paragraph is the sole basis of Dr. Stewart’s appeal:
“Benefits paid to Allison Stewart under this section shall not be less than $746.25 per month, which represents the accrued benefit under the plan as of August, 1986, the time at which the community was terminated.”
Dr. Stewart argues that this paragraph impermissibly changes, amends or adds to the previously rendered final judgment of partition dated June 30, 1989 citing Louisiana Code of Civil Procedure article 1951 and Williams v. Williams, 590 So.2d 649 (La.App.3rd Cir.1991). He also argues that it is contrary to federal law and to the Sims formula to quantify the minimum benefit to be received in the future by an alternate payee of a qualified defined benefit plan.
Dr. Stewart claims that 26 U.S.C. 401 et seq. and 29 U.S.C. 1056 et seq. prohibit *1154 the quantification of a minimum benefit to be received in the future by an alternate payee of a qualified defined benefit plan. 26 U.S.C. 414(p)(3) states, in part:
“A domestic relations order meets the requirements of this paragraph only if such order
(A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan.
(B) does not require the plan to provide increased benefits (determined on the basis of actuarial value).”
29 U.S.C. 1056(d)(3)(D)(i) and (ii) contain wording almost identical to 26 U.S.C. 414(p)(3)(A) and (B).
Dr. Stewart’s retirement plan is not included in the appeal record, thus we cannot say that the paragraph in question violates any provision of that plan.[3] Furthermore, |8the paragraph in question does not require the plan to provide any increased benefits; rather, it merely sets a minimum benefit to be paid to Mrs. Stewart based on the value of the retirement plan on the date the community was terminated. Thus, we find no violation of the cited Federal statutes.
Similarly, the argument that the inclusion of the paragraph in question violates the Sims formula is also without merit. In Sims, the court stated:
“[0]ur courts have uniformly held that, at the dissolution of the community, the non-employed spouse is entitled to judgment recognizing that spouse’s interest in proceeds from a retirement annuity, or profit-sharing plan or contract, if and when they become payable, with the spouse’s interest to be recognized as one-half of any payments to be made, insofar as they are attributable to the other spouse’s contributions or employment during the existence of the community.” Sims v. Sims, supra at 922.
In Sims, the husband’s annuity as a federal employee was to be determined by multiplying his average pay, as determined by statute, by from 1½ to 2 percent, depending upon his years of service. The court held that the community interest in the retirement plan had no immediate redeemable cash value because no value could be fixed upon the husband’s right to receive an annuity or upon lump-sum payments or other benefits to be paid on his account until his retirement or separation from service. Sims v. Sims, supra at 923. The court devised the following “Sims” formula.
Portion of pension attributable to creditable service during existence of x ⅜ x annuity (or lump community sum payment)
Pension attributable to total creditable service
The Sims formula, however, is not an ironclad rule of law in all pension disputes. In Hare v. Hodgins, 586 So.2d 118 (La.1991), the court stated that Sims should not be interpreted as meaning that a pension right could not be valued for purposes of voluntary or judicial partition prior to maturity. The court in Hare concluded that in valuing a pension right prior to maturity, a partitioning tribunal is not limited to any one method of apportionment but rather should choose a method which will achieve equality and equity in each particular ease. Id. at 127.
|Jn the instant case, the partition judgment valued the pension plan and accrued interest at $165,052.00. This valuation was set as of the community’s termination in August of 1986. The parties are thus bound by that valuation and concede they must apportion according to Sims. They disagree, however, on how the formula should be applied.
We initially observe that the QDRO does not award to Mrs. Stewart a specific portion of the plan assets, as suggested by Dr. Stewart. It orders that the following formula is to be used when the benefits become payable to Mrs. Stewart.
Alternate Payee’s Benefit = 5/X x ½ x Accrued Benefit
Accrued Benefit is defined as “the value of the benefit that would, in the absence of any qualified domestic relations order, be payable *1155 under the Plan to the Participant if his benefit commenced at the date selected by the Alternate Payee for commencement of her benefit, taking into account only the present value of the benefits accrued.” The variable “X” is defined as “the Participant’s total number of years of Service credited for benefit accrual purposes, as determined in accordance with the provision of the Plan, earned as of the date selected by the Alternate Payee for commencement of her benefits.” The QDRO then sets the minimum monthly benefit that Mrs. Stewart is entitled to based on this formula and the plan’s value as of August, 1986, the community’s termination date.
We hold that quantifying the minimum amount to be received by Mrs. Stewart does not alter the substance of the original partition judgment. The subject paragraph clarifies the fact that the plan’s value, and Mrs. Stewart’s benefits were definitively adjudicated in the partition proceedings, and that application of the Sims formula cannot result in any lesser amount. That is, the variable “X” which represents the participant’s total years in the plan, cannot be increased to the point of depriving Mrs. Stewart of the minimum monthly benefit funded by the plan at the community’s termination. The evidence before us supports this conclusion.
Mark Heller, a retirement plan consultant who was qualified as an expert in the field of private pension plans, reviewed Dr. Stewart’s defined benefit plan and testified that although the Tax Reform Act of 1986 reduced the maximum annual benefit which Dr. Stewart could receive, it did not reduce benefits which had already accrued as of the datejjjof the termination of the community in August 1986. He stated that benefits which accrued before the effective date of the Act for purposes of this plan, October 1, 1987, were protected by a grandfather clause in the Act. Heller stated that as of the date that the community was terminated, Dr. Stewart’s accrued benefit was $1,492.50 per month. Using that figure, Mrs. Stewart’s minimum monthly benefit would be $746.25 commencing with Dr. Stewart’s fifty-fifth birthday which is the normal retirement age under his plan according to the manager of the plan, Philip Clesi.
Heller stated that the plan assets as of the termination date of the community were sufficient to pay the benefits that had accrued as well as any other liabilities of the plan. In fact, he stated that while the plan was fully funded as of the community termination date, the subsequent Tax Reform Act resulted in the plan being overfunded by $50,000.00. He stated that even without the $50,000.00 in excess assets, none of which will go to Mrs. Stewart, the remaining assets in the plan could fund a monthly benefit to Mrs. Stewart of at least $746.25.
Additionally, Heller testified that Mrs. Stewart should be guaranteed this minimum monthly payment because of the wording of the judgment of partition which specifically cited the plan and the assets that existed in the plan as of the community termination date and provided that the plan would be divided according to the Sims formula. His opinion was that because the Sims formula can produce different results depending on when it is applied, the judge who rendered the partition judgment must have intended that the applicable date was to be the community termination date because the judgment specified the value of the plan as of that date.
Philip Clesi, a pension plan consultant, was hired by Dr. Stewart in 1990 to manage his retirement plan. His opinion was that, under Sims the value of the benefits due from a defined benefit plan depend on the time of payment. He admitted that the benefit due to Mrs. Stewart would be less if the Sims formula is applied as of the date of distribution but he noted that this is through no fault of Dr. Stewart. He also admitted that the plan was overfunded as a result of changes in the Tax Reform Act of 1986 and that these excess assets will revert back to Dr. Stewart.
| (After reviewing the testimony and the June 30, 1989 partition judgment, we conclude that the trial judge did not err in including a paragraph in the Qualified Domestic Relations Order which quantified the minimum benefit to be paid to Mrs. Stewart. That minimum benefit language insures that Mrs. Stewart will get what she was awarded *1156 in the partition judgment. Although the partition judgment merely stated that the plan was to be divided according to the Sims formula and did not specify how the formula should be applied, we interpret the listing of the specific value of the plan as of August 1986 as entitling Mrs. Stewart to at lease the minimum benefit she would have received if the plan had been terminated on the same date that the community was terminated.
For these reasons, we affirm the trial court judgment.
AFFIRMED.

. The pension plan was created on October 1, 1981 during the existence of the community. Therefore, all assets of the plan existing at the termination of the community in August 1986 were community assets because they were attributable to Dr. Stewart's employment during the existence of the community.

. In order to assign benefits under a retirement plan qualified pursuant to the Federal Employee Retirement Income Security Act of 1974, Federal law requires the court to enter a Qualified Domestic Relations Order.

. Neither in brief nor oral argument does Dr. Stewart specify with any particularity any provision of the plan that is changed by the QDRO.